2012 OK CIV APP 66

**HAWK ENTERPRISES, INC.,**
an Oklahoma corporation,
Plaintiff/Appellant,

v.

**CASH AMERICA INTERNATIONAL, INC.,** a Texas corporation; Cash America Financial Services, Inc., a Delaware corporation; Cash America, Inc., of Oklahoma, an Oklahoma corporation; and Bronco Pawn & Gun, Inc. an Oklahoma corporation, Defendants/Appellees.

No. 109,226.

Court of Civil Appeals of Oklahoma,
Division No. 2.

April 19, 2012.

Certiorari Denied June 25, 2012.

Glenn M. White, Ryan J. Reaves, Mullins, Hirsch, Edwards, Heath, White & Martinez, P.C., Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Seth A. Day, Larry G. Ball, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Oklahoma City, Oklahoma, for Defendants/Appellees.

JOHN F. FISCHER, Chief Judge.

¶1 Plaintiff Hawk Enterprises, Inc., appeals an order of the district court granting Defendants' motion for summary judgment as to Hawk's tortious interference theory of recovery.[1] The appeal has been assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36(b), 12 O.S. Supp. 2008, ch. 15, app. 1, and the matter stands submitted without appellate briefing. Because we cannot conclude as a matter of law that Defendants cannot be held liable for tortious interference, we reverse and remand this case to the district court for further proceedings.

## BACKGROUND

¶2 In 2000, Hawk entered into a franchise agreement with Mr. Payroll Corporation. The franchise granted Hawk the exclusive right to operate check cashing facilities in Oklahoma City using the name Mr. Payroll. Defendant Cash America International, Inc. (Cash America), an affiliate of Mr. Payroll,[2] signed the franchise agreement as guarantor for Mr. Payroll. Hawk filed this suit in 2010 alleging Cash America had started operating check cashing facilities in Hawk's exclusive territory. Hawk's petition stated two theories of recovery and requested an accounting. In the first, Hawk alleged that by operating competing check cashing facilities, Cash America tortiously interfered with its franchise agreement with Mr. Payroll. In the second, after incorporating the same factual allegations, Hawk alleged that this conduct was a breach of an implied covenant of good faith and fair dealing in Cash America's guaranty agreement. Third, Hawk sought an accounting of Cash America's check cashing operations in Oklahoma City.

¶3 Cash America, joined by the remaining Defendants, filed a motion for summary judgment to which Hawk responded. The district court granted the Defendants' motion as to Hawk's tortious interference claim but denied the motion with respect to the breach of contract claim. However, the court did find that as a guarantor of the franchise agreement, Cash America could assert any defense available to Mr. Payroll, including the waiver of economic damages for breach of the franchise agreement. The court held that Hawk would be limited to non-economic damages for any breach of contract. Hawk's request for an accounting was not addressed in Cash America's motion or in the district court's ruling.

¶4 The district court's Journal Entry of Judgment, which is the subject of this appeal, was filed June 3, 2010. Hawk's petition in error was filed January 27, 2011, more than thirty days after entry of this order. Although not raised by either party, it is incumbent on an appellate court to confirm its jurisdiction. *Broadway Clinic v. Liberty Mut. Ins. Co.*, 2006 OK 29, ¶25, 139 P.3d 873, 880. An appeal to the Supreme Court must be taken within thirty days of the judgment appealed unless otherwise provided by law. 12 O.S.2011 § 990.A. A judgment is the final determination of the rights of the parties. *Id.* § 681. Because the district court's ruling on the Defendants' motion left for further resolution Cash America's liability for any breach of contract, damages and the accounting issue, it was not a final determination of the rights of the parties to this action, and

---

1. All Defendants joined the motion but Hawk's petition asserted wrongdoing only against Cash America International, Inc. The remaining Defendants are alleged to be subsidiaries of this Defendant.

2. As stated in further detail in this Opinion, we cannot determine from the record the exact nature of the affiliation between Cash America and Mr. Payroll.

therefore not a judgment from which an appeal must be taken pursuant to section 990.A.

¶ 5 "When an action contains more than one claim for relief and a judgment is rendered that leaves a claim or claims unadjudicated, that judgment is not an appealable event in the absence of the statutorily required certificate of the trial judge." *Liberty Bank and Trust Co. of Oklahoma City, N.A. v. Rogalin*, 1996 OK 10, ¶ 10, 912 P.2d 836, 838. On June 4, 2010, the district court directed that its June 3 order be entered as a final judgment pursuant to 12 O.S.2011 § 994(A):

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the preparation and filing of a final judgment, decree, or final order as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the filing of a final judgment, decree, or final order.

Failure to appeal within thirty days after a judgment entered pursuant to section 994(A) is jurisdictional. *Southwestern Bell Yellow Pages, Inc. v. Barr*, 2008 OK 46, 187 P.3d 718. However, not every interim ruling can be advanced for appeal. "A judgment is unsuitable for § 994 certification when the court disposes of but a portion of the contest by leaving unresolved any issue on the merits of the partly-decided claim." *Oklahoma City Urban Renewal Auth. v. City of Oklahoma City*, 2005 OK 2, ¶ 11, 110 P.3d 550, 557. As stated, the June 3 order left for further determination Cash America's liability for breach of contract, and any determination of amount of damages to be awarded, as well as Hawk's request for an accounting. However, it is clear that all of Hawk's claims against Cash America arose out of the same transaction or occurrence, the operation of check cashing facilities in Hawk's exclusive territory. Although stated as separate claims for

relief, Hawk's petition instead asserts two alternate theories of recovery, tortious interference and breach of contract, for the same alleged wrong. *See Chandler v. Denton*, 1987 OK 38, ¶ 15, 741 P.2d 855, 863–64. And, "if the unadjudicated claim arises from the same transaction or occurrence as the adjudicated claim the District Court does not have the power to enter a final appealable order as to only the adjudicated portion." *Liberty Bank and Trust Co.*, 1996 OK 10, ¶ 10, 912 P.2d at 838. Consequently, the June 4 Certification of Judgment of the June 3 order was not authorized by section 994.[3] Therefore, Hawk's failure to file its present petition in error within thirty days of that date does not deprive this Court of jurisdiction.

¶ 6 The district court also found that its June 3 order affected a substantial part of the merits of the controversy and that an immediate appeal would advance the ultimate termination of the litigation, citing 12 O.S. 2011 § 952(b)(3):

> (b) The Supreme Court may reverse, vacate or modify any of the following orders of the district court, or a judge thereof:
>
> . . . .
>
> 3. Any other order, which affects a substantial part of the merits of the controversy when the trial judge certifies that an immediate appeal may materially advance the ultimate termination of the litigation; provided, however, that the Supreme Court, in its discretion, may refuse to hear the appeal. If the Supreme Court assumes jurisdiction of the appeal, it shall indicate in its order whether the action in the trial court shall be stayed or shall continue.

The Supreme Court declined to hear Hawk's appeal on this basis.[4] Further, with respect to this provision, "[t]he failure of a party to appeal from an order that is appealable under either subdivision 2 or 3 of subsection (b) of this section shall not preclude him from asserting error in the order after the judgment or final order is rendered." 12 O.S.

---

3. On September 20, 2010, in Case No. 108,465, the Supreme Court dismissed an earlier appeal by Hawk from the June 3 order finding it was not an appealable order.

4. Case No. 108,466.

2011 § 952. Therefore, Hawk's appeal is not precluded.

¶ 7 On January 27, 2011, Hawk dismissed its breach of contract theory of recovery and request for an accounting. As a result, the June 3 order granting the Defendants' motion for summary judgment as to Hawk's tortious interference claim, its sole remaining theory of recovery, became immediately appealable. Hawk's petition in error filed February 28, 2011 was timely and this court has jurisdiction to decide this appeal.

## STANDARD OF REVIEW

¶ 8 Title 12 O.S.2011 § 2056 governs the procedure for summary judgment. A motion for summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* § 2056(C). We review the district court's grant of summary judgment *de novo. Carmichael .v. Beller,* 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053.

## ANALYSIS

¶ 9 Because Hawk dismissed its breach of contract claim and request for an accounting, the only remaining theory of recovery in this case is the tortious interference claim asserted against Cash America. The sole issue for this appeal, therefore, is whether the district court erred in granting Cash America's motion for summary judgment as to that claim. In some respects, the material facts are undisputed. The franchise agreement was signed by Mr. Payroll as franchisor and Hawk as franchisee. Prior to this transaction, it appears Mr. Payroll was purchased by Cash America and that Cash America may be the parent corporation of Mr. Payroll, although the extent of Cash America's ownership and control of Mr. Payroll is not established in the record. Mr. Payroll is a Delaware corporation and Cash America is a Texas corporation. Although the two entities are separate corporations, they share some of the same officers and directors. Cash America signed the franchise agreement as guarantor of Mr. Payroll's obligations. The same individual signed the agreement for both Mr. Payroll and Cash America. The franchise agreement contains a choice of law provision specifying that the law of the state of Texas shall govern the agreement including "all matters relating to its validity, construction, performance, and enforcement."

### I. Choice of Law

¶ 10 Despite this provision, we must determine whether Texas or Oklahoma law provides the elements of Hawk's tortious interference claim against Cash America. Although the parties have specifically agreed that Texas law will govern any matters relating to the "validity, construction, performance, and enforcement" of the franchise agreement, Hawk's claim against Cash America that we must dispose of on appeal is for tortious interference with the franchise agreement. We find the choice of law provision in the franchise agreement is not broad enough to include Hawk's claim for tortious interference against Cash America.

¶ 11 In a tort action, Oklahoma follows the most significant relationship approach to conflict-of-laws issues. "[T]he rights and liabilities of parties with respect to a particular issue in tort shall be determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." *Brickner v. Gooden,* 1974 OK 91, ¶ 23, 525 P.2d 632, 637. Following the Restatement (Second) of Conflict of Laws, the Supreme Court in *Brickner* identified the contacts to be considered as factors when determining which state's law would apply:

(1) the place where the injury occurred.

(2) the place where the conduct causing the injury occurred,

(3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(4) the place where the relationship, if any, between the parties occurred.

*Id.* (citing Restatement (Second) of Conflict of Laws § 145 (1971)).[5] These factors weigh heavily in favor of applying Oklahoma law. With respect to the first two, Hawk alleges that it was injured when Cash America set up competing check cashing facilities in Hawk's exclusive Oklahoma City territory. The third factor favors neither party. Cash America is a Texas corporation, domiciled in Texas; Hawk is an Oklahoma corporation with its principle place of business in Edmond, Oklahoma. With respect to the fourth factor, although the relationship of these parties is defined by the franchise agreement, and that agreement contemplates that some of the obligations of the contract will be performed in Texas, the contractual obligation fundamental to Hawk's claim is the right to operate pursuant to the grant of franchise within its exclusive Oklahoma City territory. The franchisor agreed not to "establish or operate, or license any other person to establish or operate, a Mr. Payroll facility offering check cashing services" within Hawk's exclusive territory. Cash America "absolutely and unconditionally" guaranteed that Mr. Payroll would perform this obligation. We find that Oklahoma "has the most significant relationship to the occurrence and the parties" in this case, and therefore apply Oklahoma law to determine the viability of Hawk's tortious interference claim.[6] *See id.* ¶ 23, 525 P.2d at 637.

## II. Tortious Interference

¶ 12 In defining the nature of a tortious interference claim, Oklahoma "has repeatedly protected contractual relationships between parties from unprivileged, unjustified, and inexcusable interference from one who is not a party to the contract or business relation." *Wilspec Techs., Inc. v. Dunan Holding Group Co., Ltd.,* 2009 OK 12, ¶ 11, 204 P.3d 69, 73 (adopting Restatement (Second) of Torts § 766A (1979): "One who intentionally and improperly interferes with the performance of a contract … between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability"). The form of interference applicable to Hawk's claim is stated in Restatement (Second) of Torts, § 766:

> One who intentionally and improperly interferes with the performance of a contract … between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Oklahoma has adopted this statement of the tort. *Wilspec,* 2009 OK 12, ¶ 7, 204 P.3d at 71–72.

> Presently, Oklahoma recognizes a tortious interference claim with a contractual or business relationship if the plaintiff can prove (1) the interference was with an existing contractual or business right; (2) such interference was malicious and wrongful; (3) the interference was neither justified, privileged nor excusable; and (4) the interference proximately caused damage. Additionally, the claim is viable only if the interferor is not a party to the contract or business relationship.

*Id.* ¶ 15, 204 P.3d at 74.

¶ 13 For purposes of summary judgment, we infer from the undisputed facts that the operation of Cash America's facilities in Oklahoma City as alleged by Hawk would

---

5.  These factors are "to be taken into account and to be evaluated according to their relative importance with respect to a particular issue." *Brickner,* 1974 OK 91, ¶ 23, 525 P.2d at 637 (citing Restatement (Second) of Conflict of Laws § 145).

6.  We do so after considering, as the Restatement instructs:

    (a) the needs of the interstate and international systems,

    (b) the relevant policies of the forum,

    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
    (d) the protection of justified expectations,
    (e) the basic policies underlying the particular field of law,
    (f) certainty, predictability and uniformity of result, and
    (g) ease in the determination and application of the law to be applied.

    Restatement (Second) of Conflict of Laws § 6(2). None of these factors persuades us that Oklahoma law should not be applied.

constitute a breach of the franchise agreement by Mr. Payroll, and for which Mr. Payroll would be liable in a breach of contract action. *See Carmichael v. Beller,* 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053 ("all inferences and conclusions to be drawn from the evidentiary materials must be viewed in the light most favorable to the non-moving party"). Hawk claims that Cash America, a close affiliate of Mr. Payroll, is infringing on the exclusive right granted to Hawk in the franchise agreement to use Mr. Payroll's licensed system for its check cashing operations. Hawk claims that the shared officers and directors of Cash America and Mr. Payroll have access to confidential information, trade secrets, and the expertise and knowledge of Mr. Payroll's agents and employees, as well as confidential information regarding Hawk's operations as a Mr. Payroll franchisee.

¶ 14 Pursuant to the standard at the summary judgment stage, we infer that the relationship between Mr. Payroll and Cash America was such that by operating these facilities Cash America induced Mr. Payroll to breach the franchise agreement. We draw this inference because it appears that Mr. Payroll could have enforced the exclusive franchise through legal means. However, that would have required action by some or all of the same people who made the decision on behalf of Cash America to operate the competing facilities. Hawk alleges that this conduct by Cash America caused Mr. Payroll to breach the franchise agreement by failing to authorize legal action or otherwise prevent the allegedly tortious conduct. "Interference with the third party's performance may be by prevention of the performance...." Restatement (Second) Torts § 766 cmt. k. Further, "[t]he fact that the Plaintiff has an available action for breach of contract against the third person does not prevent him from maintaining an action under the rule stated

in [section 766] against the person who has induced or otherwise caused the breach. The two are both wrongdoers...." *Id.* cmt. v. Therefore, to establish a tort claim against Cash America, Hawk must show that Cash America induced Mr. Payroll to breach the franchise agreement by failing to enforce the exclusive territory provision. Because the two corporations are related, the dispositive issue is whether Cash America and Mr. Payroll are distinct entities such that a tortious interference claim may be maintained against Cash America. This depends on resolution of two separate issues: whether an action may be maintained against Cash America as a corporation affiliated with Mr. Payroll; and, whether Cash America is a stranger to the franchise agreement.

## A. Affiliated Corporations

¶ 15 Oklahoma has not addressed the issue of whether a parent corporation may be liable for tortious interference with the contracts of a subsidiary.[7] The Oklahoma Supreme Court has held that one who acts in a representative capacity cannot be liable for tortious interference with the contract of its principal. *Ray v. American Nat'l Bank & Trust Co. of Sapulpa,* 1994 OK 100, ¶ 15, 894 P.2d 1056, 1060 (a party cannot "wrongfully interfere with a contract concerning which it was acting in a representative capacity for a party," and "[a] cause of action for wrongful interference with contract can arise only when one who is not a party to a contract interferes with that contract by convincing one of the contracting parties to breach its terms"); *Voiles v. Santa Fe Minerals, Inc.,* 1996 OK 13, ¶ 18, 911 P.2d 1205, 1210 (holding same).

¶ 16 In *Mason v. Oklahoma Turnpike Auth.,* 115 F.3d 1442, 1453 (10th Cir.1997),[8] the Tenth Circuit Court of Appeals, interpreting Oklahoma law, found "that corporate employees can be found liable under Okla-

---

**7.** As previously stated, the exact nature of the relationship between Cash America and Mr. Payroll is not disclosed in the record, although it appears that Cash America may have purchased Mr. Payroll prior to execution of the franchise agreement. We will assume for purposes of determining whether Hawk has a viable claim for tortious interference against Cash America that the relationship between Cash America and Mr.

Payroll is in the nature of parent/subsidiary corporations, although this is an issue that shall be addressed on remand.

**8.** *Rev'd on other grounds, TW Telecom Holdings, Inc. v. Carolina Internet, Ltd.,* 661 F.3d 495 (10th Cir.2011).

homa law for tortious interference with a corporate contract." The court recognized, as have other jurisdictions, that "[a]s with any tortious interference claim, the determinative issue remains whether the actor's interference was justified, privileged, or excusable." *Id.* "Therefore, a corporate officer's or director's interference with a corporate contract will be privileged only when the interference is undertaken in good faith and for a bona fide organizational purpose." *Id.* (citing *Hinson v. Cameron,* 1987 OK 49, ¶ 6, n. 3, 742 P.2d 549, 551, n. 3, and *Johnson v. Nasca,* 1990 OK CIV APP 87, ¶¶ 12–13, 802 P.2d 1294, 1297, for the proposition that Oklahoma courts had left open the possibility of a viable claim against a corporate agent for tortious interference). Although not controlling, we find the federal court's analysis persuasive. *See Howard v. Nitro–Lift Techs., L.L.C.,* 2011 OK 98, 273 P.3d 20, n. 3.

¶ 17 In *Martin v. Johnson,* 1998 OK 127, ¶ 31, 975 P.2d 889, 896, the Supreme Court recognized the Tenth Circuit's ruling "that in Oklahoma for a corporate officer's interference with a corporation's contract to be privileged as to that officer it must have been done in good faith." The Court held that "an employee or agent must act in good faith and in the interest of the employer or principal," and when "an employee acts in bad faith and contrary to the interests of the employer in tampering with a third party's contract with the employer we can divine no reason that the employee should be exempt from a tort claim for interference with contract." *Id.* ¶ 32, 975 P.2d at 896–97. *See Fulton v. People Lease Corp.,* 2010 OK CIV APP 84, 241 P.3d 255 (reversing summary judgment on claim for tortious interference with economic relations because there was a dispute of fact as to whether an employee was acting in bad faith and contrary to employer's interest); *Eapen v. McMillan,* 2008 OK CIV APP 95, 196 P.3d 995 (reversing summary judgment and holding same).

¶ 18 In the absence of controlling authority, we may also look to other jurisdictions that have addressed the issue. *See Burrows v. Burrows,* 1994 OK 129, ¶¶ 11–12, 886 P.2d 984, 988–89; *Busby v. Quail Creek Golf & Country Club,* 1994 OK 63, ¶¶ 10–11, 885 P.2d 1326, 1330–31. Cash America cites a Texas case in support of its position that as guarantor of Mr. Payroll's obligations in the franchise agreement, it cannot be liable for tortious interference. *See Schoellkopf v. Pledger,* 778 S.W.2d 897 (Tex.App.1989) (deciding that two individuals who owned all of the stock of a corporation could not be liable for tortious interference with the corporation's contracts). However, Texas appellate courts addressing this issue have differed in opinion, and the Texas Supreme Court has yet to resolve the split between divisions.[9]

---

9. Two divisions of Texas' appellate courts have held that a parent corporation is not capable of tortiously interfering with the contracts of a wholly owned subsidiary. *See H.S.M. Acquisitions, Inc. v. West,* 917 S.W.2d 872, 882–83 (Tex. App.1996); *American Med. Int'l, Inc. v. Giurintano,* 821 S.W.2d 331, 336–37 (Tex.App.1991). Another division of Texas' appellate courts held to the contrary. *See Valores Corporativos, S.A. de C.V. v. McLane Co., Inc.,* 945 S.W.2d 160 (Tex. App.1997). *See also In re ContiCommodity Servs., Inc., Secs. Litig.,* 733 F.Supp. 1555, 1568 (N.D.Ill.1990)(applying Texas law and finding a parent corporation capable of tortious interference with contracts of a wholly-owned subsidiary, if parent is not the subsidiary's alter ego, but interference may be privileged), *rev'd in part on other grounds sub nom. Brown v. United States,* 976 F.2d 1104 (7th Cir.1992) *and aff'd in part on other grounds sub nom. ContiCommodity Servs., Inc. v. Ragan,* 63 F.3d 438 (5th Cir.1995), *cert. denied,* 517 U.S. 1104, 116 S.Ct. 1318, 134 L.Ed.2d 471 (1996); *Eloise Bauer & Assocs., Inc. v. Elec. Realty Assocs., Inc.,* 621 S.W.2d 200, 203 (Tex.App.1981) (holding that an employee of a corporation may be liable in tort for inducing the employer to breach a contract between the employer and a third party if the employee acts in bad faith). *See generally Deauville Corp. v. Federated Dep't Stores, Inc.,* 756 F.2d 1183, 1196 (5th Cir.1985) ("a plaintiff cannot recover for tortious interference with contract or with business relations if the allegedly interfering third party acted to protect his own legitimate interest," which may include stock ownership or having "[a] financial interest superior to that of one of the parties to the contractual or business relationship"); *Holloway v. Skinner,* 898 S.W.2d 793, 797 (Tex.1995) ("When there is a complete identity of interests, there can be no interference as a matter of law," but "because [the president/director's] interests as a minority shareholder and those of the Corporation are not of necessity identical, we hold that [the president/director] could have acted in a manner that served his interests at the expense of the other shareholders"); *Maxey v. Citizen's Nat'l Bank of Lubbock,* 507 S.W.2d 722, 726 (Tex.1974) ("an officer or director may not be held liable in damages for

Other courts addressing the issue have held that a parent corporation may potentially be liable for tortious interference with the contracts of a subsidiary, and the question is whether the corporation was privileged or legally justified in interfering.[10]

¶ 19 We find that the determination of whether a parent corporation can be liable for tortious interference with the contracts of a subsidiary is a question that must be determined on a case by case basis, analyzing the factors provided in the Restatement:

> In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:
>
> (a) the nature of the actor's conduct,
>
> (b) the actor's motive,
>
> (c) the interests of the other with which the actor's conduct interferes,
>
> (d) the interests sought to be advanced by the actor,
>
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference and

(g) the relations between the parties.

Restatement (Second) of Torts § 767.[11] In this case, the majority of these factors are informed by the relationship between the parties.

### B. Whether Cash America is a Stranger to the Contract

¶ 20 On appeal, Cash America claims that as guarantor of Mr. Payroll's performance of the obligations in the franchise agreement, it is a party to that contract and therefore cannot be liable for tortious interference.[12] *See Ray v. American Nat'l Bank & Trust Co. of Sapulpa,* 1994 OK 100, ¶ 15, 894 P.2d 1056, 1060 (tortious interference can only be committed by a stranger to the contract). As explained in *Riverside Nat'l Bank v. Manolakis,* 1980 OK 72, ¶ 9, 613 P.2d 438, 441, the obligation of a guarantor is independent of and separately enforceable from the obligation of the principal obligor. And, it is not necessary that the principal obligor be a party to the guaranty

---

inducing the corporation to violate a contractual obligation, provided that the officer or director acts in good faith and believes that what he does is for the best interest of the corporation").

**10.** *Oxford Furniture Cos., Inc. v. Drexel Heritage Furnishings, Inc.,* 984 F.2d 1118, 1126 (11th Cir.1993) ("Alabama law ... recognizes that a parent corporation is a distinct entity from its subsidiary and that the parent is not liable for the acts of its subsidiary unless the subsidiary is a mere adjunct, instrumentality, or alter ego of the parent corporation," and the parent corporation could avoid liability for tortious interference by demonstrating "that it was either a party to the transaction or that [the subsidiary] was merely its alter ego"); *Phil Crowley Steel Corp. v. Sharon Steel Corp.,* 782 F.2d 781, 783 (8th Cir.1986)(applying Missouri law to find that plaintiff could prevail in an action for tortious interference against parent corporations, but had the burden to demonstrate lack of legal justification, and finding improper purpose where parent corporations acted with knowledge that inducing breach would damage the subsidiary's "financial situation and reputation," and the breach was not induced to protect any existing threatened interest of the parent corporations); *Green v. Interstate United Mgmt. Servs. Corp.,* 748 F.2d 827, 831 (3rd Cir.1984) (applying Pennsylvania law) (parent corporation was privileged to intervene

where no bad faith and done in the interests of protecting the subsidiary from entering a "bad bargain").

**11.** We recognize that for purposes of antitrust law the United States Supreme Court has held that "[a] parent and its wholly owned subsidiary have a complete unity of interest. Their objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousnesses, but one." *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 771, 104 S.Ct. 2731, 2741, 81 L.Ed.2d 628 (1984). However, *Copperweld* is distinguishable. The issue in that case was whether a parent and its subsidiary could conspire to violate the Sherman Act, 15 U.S.C. § 1. The concerted action by distinct economic entities required to find a "contract, combination or conspiracy ... in restraint of trade" that violates § 1 is absent from the analysis of an individual's potentially tortious conduct not amounting to an antitrust violation. Further, the motive and effect factors in the Restatement are irrelevant to *per se* violations of § 1 of the Sherman Act.

**12.** In the district court, Cash America also claimed that the guaranty provision in the franchise agreement was a separate contract, and that it was not a party to the franchise agreement for purposes of Hawk's breach of contract claim.

agreement, or that the guarantor be a party to the principal obligation "unless the guarantor signs the instrument of principal indebtedness." *Id.* n. 11 (citing L. Simpson, *Handbook on the Law of Suretyship* (1950)). Therefore, the fact that Cash America is a guarantor does not determine whether as a matter of law it is a stranger to the franchise agreement.

¶ 21 Further, the exact relationship between Mr. Payroll and Cash America is not fully developed in this record. There is evidence that Cash America purchased Mr. Payroll. It appears that the purchase was of corporate stock but that evidence does not establish whether Mr. Payroll is wholly or only partially owned by Cash America. There is also evidence that the two companies share some corporate officers and/or employees. However, this evidence does not disclose the decision-making authority of the shared employees and the extent, if any, of Cash America's control of Mr. Payroll's corporate conduct. These issues shall be addressed by the parties on remand.[13]

¶ 22 Because these disputed issues of fact remain and are material, we cannot say that as a matter of law Cash America was entitled to summary judgment. The district court therefore erred in granting summary judgment.[14] The ruling granting Cash America's motion for summary judgment as to Hawk's tortious interference claim is reversed.[15]

**13.** Although we have determined that Oklahoma law defines the nature of the tort, this does not necessarily preclude application of Texas law to resolve any issues involving the construction or performance of the franchise agreement pursuant to the choice of law provision contained therein.

**14.** Cash America further claims that any interference with the franchise agreement was either not wrongful for lack of 'malice,' or was privileged conduct. *"Malice*, as part of the second element of this tort, is the intentional performance of a wrongful act without justification or excuse." *Morrow Dev. Corp. v. American Bank and Trust Co.,* 1994 OK 26, ¶ 10, 875 P.2d 411, 416. Privilege is defined in the Restatement:

One who, by asserting in good faith a legally protected interest of his own or threatening in

## CONCLUSION

¶ 23 Cash America guaranteed the performance of Mr. Payroll, an affiliated corporation, pursuant to a franchise agreement with Hawk Enterprises. Alleging that the franchise agreement was breached when Cash America established competing check cashing facilities in its exclusive territory, Hawk sued Cash America for tortious interference with the franchise agreement. It cannot be determined on the basis of this record whether Cash America is liable for tortious interference with the franchise agreement. Therefore, the June 3, 2010, order is reversed to the extent that it granted Defendants' motion for summary judgment on Hawk's tortious interference claim, and this case is remanded for further proceedings consistent with this Opinion.

¶ 24 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

BARNES, P.J., and WISEMAN, J., concur.

good faith to protect the interest by appropriate means, intentionally causes a third person not to perform an existing contract ... does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction.

Restatement (Second) of Torts § 773. The question of whether there is some privilege, justification, or excuse for the conduct complained of cannot be determined on the basis of this record and may be addressed on remand.

**15.** Because Hawk dismissed its breach of contract claim prior to this appeal, we do not address Cash America's potential direct or vicarious liability for any breach of the franchise agreement.