PENN GRAND MANAGEMENT v. HOMERIVER GROUP



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:PENN GRAND MANAGEMENT v. HOMERIVER GROUP

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 PENN GRAND MANAGEMENT v. HOMERIVER GROUP
2021 OK CIV APP 15
488 P.3d 754
Case Number: 118310
Decided: 09/25/2020
Mandate Issued: 04/21/2021
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2021 OK CIV APP 15, 488 P.3d 754

 

PENN GRAND MANAGEMENT, LLC, an Oklahoma Limited Liability Company, Plaintiff/Appellant,
v.
HOMERIVER GROUP, LLC, a foreign limited liability company, Defendant/Appellee,
and
KERRY STORY, d/b/a KS Elite Services, Defendant.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE SUSAN C. STALLINGS, TRIAL JUDGE

AFFIRMED IN PART, REVERSED IN PART, 
AND REMANDED FOR FURTHER PROCEEDINGS 

Daniel G. Couch, Lauren N. Lenahan, DANIEL G. COUCH, P.L.L.C., Oklahoma City, Oklahoma, for Plaintiff/Appellant

Rollin Nash, Jr., Gary L. Giessmann, NASH COHENOUR & GIESMANN, P.C., Oklahoma City, Oklahoma, for Defendant/Appellee HomeRiver Group, LLC

JOHN F. FISCHER, JUDGE:

¶1 Plaintiff Penn Grand Management, LLC, seeks review of the district court's order granting Defendant HomeRiver Group, LLC's motion to dismiss. The district court dismissed HomeRiver from the lawsuit, enforcing a forum-selection clause in the parties' contract. The appeal has been assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36(b), 12 O.S. Supp. 2013, ch. 15, app. 1, and the matter stands submitted without appellate briefing. The district court erred in dismissing HomeRiver from the lawsuit because there are claims in the petition that do not fall within the scope of the contract's forum selection clause.

BACKGROUND

¶2 Penn Grand purchased an apartment complex located in Oklahoma City (Penn Grand Apartments) on January 31, 2018. Prior to that purchase, Penn Grand had been in negotiations with HomeRiver regarding HomeRiver's proposal to be hired as property manager for the apartments. At the time Penn Grand purchased the apartments, there were two eight-unit buildings, described as "burn-out" buildings, that had fire damage "down to the studs" and required reconstruction. In addition to the necessary reconstruction of those units, Penn Grand desired additional work at the apartments, such as removing a pool, constructing a dog park, building dumpster covers with fencing, reconstructing concrete ADA ramps and removal of areas of vinyl siding. By email dated January 31, 2018, HomeRiver's CEO, Andrew Propst, advised Penn Grand that the property management service HomeRiver would provide "covers all the day-to-day managing of the properties including overseeing maintenance. It would not cover a large-scale overseeing of a big rehab that you are proposing."

¶3 Penn Grand's owner and manager, Jim Huntzicker, and HomeRiver's CEO, Andrew Propst, signed a "Property Management Agreement" on February 2, 2018. The 7-page agreement detailed the services HomeRiver would provide with respect to the management and day-to-day operation of the apartments, for a two-year period, and to continue on a month-to-month basis until terminated.

¶4 After executing the Property Management Agreement, the parties negotiated terms for HomeRiver's construction management services. By email dated February 22, 2018, HomeRiver submitted a "Management Fee Proposal" for providing "Construction Management services" for Penn Grand's construction project. The Management Fee Proposal outlined HomeRiver's fees for providing one full-time Project Manager and general liability insurance and included an additional "Cost plus 10%" fee. The Management Fee Proposal provided that "[a]ll costs are based on a 12-month construction duration."

¶5 Beginning March 6, 2018, HomeRiver sent Penn Grand a series of proposals specifying projects to be completed and itemizing construction costs. HomeRiver designated KS Elite Services, owned and operated by Oklahoma resident Defendant Kerry Story (collectively referred to as Story), as the local contractor it would provide to complete the construction project outlined in the proposals. HomeRiver also provided an owner/contractor master agreement for Penn Grand and Story to execute, which specified, among other things, how Story would be compensated through periodic payment draws upon completion of certain phases of the construction. In additional emails during the month of April 2018, HomeRiver informed Penn Grand that Story had ordered materials, started demolition, and commenced the reconstruction work.[1]

¶6 Penn Grand stopped construction when it became dissatisfied with both HomeRiver's management of the construction project and the construction services Story performed. On or around June 1, 2018, Penn Grand informed HomeRiver and Story that the construction project was terminated. Penn Grand terminated the Property Management Agreement on or around June 12, 2018.[2]

¶7 On September 7, 2018, Penn Grand commenced this action against HomeRiver and Story. Penn Grand asserted claims for breach of contract, breach of fiduciary duties, fraud and misrepresentation, conversion, breach of express and implied warranties, negligent construction and supervision of construction, and accounting.

¶8 HomeRiver filed a motion to dismiss pursuant to 12 O.S.2011 § 2012(B)(6), asserting that Penn Grand had failed to bring the action in the forum required by the terms of the "Contract," which it attached as "Exhibit A." The attached contract is the Property Management Agreement. Paragraph 25 of that agreement provides:

Governing Law/Forum -- Tennessee law governs the interpretation, validity, performance and enforcement of this Agreement. Further, any claim or cause of action may only be brought in the state or federal courts located in Tennessee, and Owner agrees to submit to the exclusive personal jurisdiction of such courts and hereby appoints all other Owners as agents for the purpose of providing notices and service of judicial process. Owners also appoint the Secretary of State for Tennessee as your agent for service of process.

¶9 Penn Grand filed a brief in opposition to the motion to dismiss, asserting several reasons why the forum selection clause was unenforceable. Penn Grand argued that the Property Management Agreement was a contract of adhesion, pointing out that the forum selection clause was part of HomeRiver's form contract. Penn Grand also pointed out that Tennessee had no relation to the transactions, events, parties or the property, and Tennessee would be an inconvenient forum. HomeRiver filed a reply. Both parties attached exhibits to their motions.

¶10 HomeRiver called one witness, its CEO Propst, to testify at the hearing on its motion to dismiss. Prior to calling the first of its three witnesses, Penn Grand moved for a "directed verdict." Penn Grand first argued that there was no connection between Tennessee and the parties and/or actions giving rise to the lawsuit. It argued that Tennessee would be an extraordinarily difficult and inconvenient forum for bringing its case against HomeRiver, particularly with regard to attendance of witnesses. Penn Grand also argued that enforcing the forum selection clause would be contrary to public policy because that particular clause was not negotiated and its CEO was not aware of its terms at the time he signed the Property Management Agreement. After the district court overruled Penn Grand's motion for directed verdict, Penn Grand presented its case. Both parties made closing arguments.

¶11 Following the evidentiary hearing, the district court granted HomeRiver's motion to dismiss. The district court dismissed "all claims" asserted against HomeRiver, without prejudice to Penn Grand "refiling same in Tennessee." The district court's order states that dismissal is "based upon the forum selection clause in the parties' contract." Penn Grand appeals.[3]

 

STANDARD OF REVIEW

 

¶12 In Tucker v. The Cochran Firm-Criminal Defense Birmingham L.L.C., 2014 OK 112, 341 P.3d 673, the Court addressed the procedure to be employed when a party seeks to enforce a forum selection clause. "When [the] parties' agreement has an interstate forum-selection clause and a party seeks its judicial enforcement in an Oklahoma District Court by seeking dismissal of the Oklahoma proceeding, then the procedure for its enforcement is by a motion pursuant to 12 O.S.[2011] § 2012(B)(6), or Rule 13 motion for summary judgment." Id. ¶ 0.

¶13 A motion to dismiss for failure to state a claim upon which relief may be granted, filed pursuant to § 2012(B)(6), will be treated as a motion for summary judgment when matters outside of the pleadings are presented in support of the motion and those matters are not excluded by the district court when the motion is considered. Id. ¶ 30. Here, the parties submitted, and the district court considered, numerous exhibits in addition to the agreement at issue as well as testimony of witnesses.

¶14 Because disposition of the forum selection issue was by summary judgment procedure and resulted in a legal ruling, the issues are before this Court for de novo review. Carmichael v. Beller, 1996 OK 48, ¶ 2, 914 P.2d 1051. De novo review involves a plenary, independent, and non-deferential examination of the district court's rulings of law. Neil Acquisition, L.L.C. v. Wingrod Inv. Corp., 1996 OK 125, n.1, 932 P.2d 1100. See Horton v. Hamilton, 2015 OK 6, ¶ 8, 345 P.3d 357 ("Summary judgment will be affirmed only if the appellate court determines that there is no dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.").

ANALYSIS

I. Challenging a Contract-Specified Forum

¶15 In Tucker v. The Cochran Firm-Criminal Defense Birmingham L.L.C., 2014 OK 112, 341 P.3d 673, the Oklahoma Supreme Court explained that a dispute concerning the judicial enforcement of a contract-based obligation specifying venue selection is a merits-based issue on the meaning of a specific provision of a contract. Id. ¶ 20. When deciding whether to enforce a forum selection clause, the district court first determines whether the claims in the petition fall within the scope of a valid clause. Rawdon v. Starwood Capital Grp., 2019 OK CIV APP 70, ¶¶ 17-21, 453 P.3d 516.[4] The district court does not consider arguments about the parties' private interests because the private interests in selecting a forum for disputes were already expressed and determined by the forum-selection clause. Tucker, 2014 OK 112, ¶ 26. The court "'may consider arguments about public-interest factors only.'" Id. ¶ 32 (quoting Atlantic Marine Constr. Co. v. United States Dist. Ct. for the Western Dist. of Texas, ___ U.S. ___ , 134 S. Ct. 568, 582 (2013)).

¶16 Penn Grand's appellate challenge to the district court's enforcement of the forum selection clause raises nine issues for review. Those issues include various assertions regarding why the forum selection clause should not be enforced, private interest factors such as the alleged serious inconvenience of the selected Tennessee forum, and public policy factors such as unequal bargaining power and inability to negotiate, which Penn Grand claims resulted in a forum selection clause that unreasonably favors HomeRiver. According to Penn Grand, Oklahoma is the proper forum for this action, and the district court erred in dismissing its claims against HomeRiver. After a de novo review of the record, we find the dispositive issue in this appeal is whether the claims Penn Grand asserted in its petition fall within the scope of the Property Management Agreement's forum selection clause, warranting dismissal.[5]

 

II. The Scope of the Forum Selection Clause

 

¶17 The question of the scope of a forum selection clause, like other contract clauses, is one of contract interpretation. The clause is considered in light of the contract as a whole, and its language is assigned its plain and ordinary meaning. See Pitco Prod. Co. v. Chapparal Energy, Inc., 2003 OK 5, ¶ 14, 63 P.3d 541. If the contract language is not ambiguous, its meaning is a matter of law for the court. GEICO Gen. Ins. Co. v. Northwestern Pac. Indem. Co., 2005 OK 40, ¶ 11, 115 P.3d 856.

¶18 Recently, in Rawdon v. Starwood Capital Grp., 2019 OK CIV APP 70, 453 P.3d 516, another division of this Court explained: "The parties' intent is the paramount consideration in interpreting a contract. In determining whether the claims fall under the forum selection clause, we must interpret the language of the clause and ascertain the intent of the parties." Id. ¶ 17. That requires consideration of the language of the forum selection clause, the language of the contract in which it appears, along with the nature of the claims asserted in the lawsuit. The "important question" is whether the terms of the clause are sufficiently broad so that the plaintiff's claims against the defendant must be litigated according to the forum selection clause. Id.

¶19 The Court in Rawdon recognized that the Oklahoma Supreme Court has not explicitly ruled on the issue of scope as it pertains to a particular forum selection clause. Id. ¶ 18. However, as noted in Rawdon, the Court of Civil Appeals and the federal courts in Oklahoma have interpreted various contract clauses governing litigation of disputes. See Id. ¶¶ 18-19, and cases cited therein.[6]

¶20 The language of the forum selection clause in the contract at issue in Rawdon indicated the parties' intent for that clause to encompass the plaintiffs' claims for fraud, breach of fiduciary duty and conspiracy because of use of the terms "any action or proceeding arising out of, or relating to, [the parties' LLC agreement]." Id. ¶¶ 16, 20. The Rawdon court construed the forum-selection clause broadly because of that language and affirmed the district court's order dismissing the action, concluding that the district court properly determined that the plaintiffs' action could only be brought in a state or federal court sitting in New York, New York. The Rawdon court found that "where the allegedly fraudulent conduct originated via the agreement, the plaintiffs' lawsuit "relates directly to the LLC Agreement." The court held that the plaintiffs' claims arose out of or related to the LLC Agreement and "are thus encompassed by the forum selection clause contained therein." Id. ¶ 20.

¶21 The forum selection clause in the Property Management Agreement executed by Penn Grand and HomeRiver states that "any claim or cause of action may only be brought in the state or federal courts located in Tennessee . . . ." However, unlike the situation in Rawdon, where there was only one applicable agreement between the parties for the court to consider in its analysis, id. ¶ 12, the record here reveals that Penn Grand and HomeRiver subsequently negotiated and reached a second agreement regarding a construction project and the management of that project. The terms of the agreement for construction management did not include a forum selection clause.

¶22 Nothing in the forum selection clause or in other language of the Property Management Agreement indicates the parties' intent that the forum selection clause apply to and control aspects of the parties' relationship and dealings beyond the day-to-day management and maintenance of the Penn Grand apartments. For example, paragraph 4 of the Property Management Agreement provides:

Scope of Services -- The purpose of this Agreement is for [HomeRiver] to undertake the management of the Premises and the letting of the same to third party tenants for Owner [Penn Grand], and to relieve Owner of the day-to-day details and responsibilities of management of said Premises. (Emphasis added.)

The scope of services paragraph lists the services that HomeRiver would undertake "with respect to the Premises for the benefit of [Penn Grand]," including: (1) serving current tenants and obtaining suitable new tenants for vacancies; (2) promptly reporting conditions on the property which require Penn Grand's attention; (3) performing two physical property inspections per year; (4) showing the apartments to prospective tenants; (5) processing applications for rentals; (6) assisting in preparation of apartment leases; (7) collecting, depositing and dispersing monthly rents and security deposits; and (8) serving notices to delinquent tenants, and appearing as Penn Grand's agent in small claims collections and eviction actions. The scope of services specifically excludes "the rendition of legal or financial or real estate or other advice."

¶23 Paragraph 9 of the Property Management Agreement governs "Maintenance and Repair" of the apartments and provides that HomeRiver will recommend reasonable steps to maintain the premises in good repair and provide necessary maintenance and repair work. It addresses sudden emergency repairs, recurring repairs within the limits of the operation budget, and requires Penn Grand's prior approval of any maintenance or repair expenditure exceeding $350 per unit.

¶24 The parties' intent is further expressed in paragraph 19 of the Property Management Agreement. "Entire Agreement -- This Agreement constitutes the entire agreement between [the parties] with respect to the management and operation of the Premises . . . ."

¶25 The appellate record shows that, after the parties executed the Property Management Agreement, HomeRiver began submitting separate proposals to Penn Grand regarding the management and performance of a large-scale construction project, with an anticipated 12-month construction duration, that would cost nearly $500,000. The terms the parties negotiated for construction management services did not fulfill or cover any of the essential obligations outlined in the Property Management Agreement for day-to-day operation of the apartments. The terms the parties subsequently agreed to regarding construction management imposed obligations separate and distinct from those detailed in the Property Management Agreement, further indicating that construction management services operated independently from property management services. The parties' agreement regarding management and performance of the construction project at the apartments cannot reasonably be construed to be part of the Property Management Agreement.

III. The Claims in Penn Grand's Petition

¶26 As previously noted, this Court must also examine the nature of the claims asserted in Penn Grand's lawsuit. And, based on examination of the petition, we then must determine the "important question," which is whether the claims in the petition fall within the scope of the Property Management Agreement's forum selection clause, requiring those claims to be litigated in Tennessee. Rawdon v. Starwood Capital Grp., 2019 OK CIV APP 70, ¶ 17, 453 P.3d 516.

¶27 The district court dismissed HomeRiver from this action after determining that all of the claims Penn Grand asserted against HomeRiver were encompassed within the forum selection clause. However, with few exceptions, the allegations of Penn Grand's petition involve construction management services. For example, Count One of the petition alleges generally that HomeRiver breached its contract "as construction manager for the construction project, and as property manager." More specifically, however, Count One alleges that HomeRiver failed to properly oversee and manage construction work, provided false and misleading construction status updates, created false invoices for work not yet performed, provided substandard and defective construction work, failed to pay sums due to a third-party company for labor and material, and failed to provide an accounting.

¶28 Count Two of the petition alleges generally that HomeRiver owed Penn Grand certain fiduciary duties, but then goes on to allege specifically that HomeRiver breached its fiduciary duties when it misrepresented the cost, time and progress made on the construction project, submitted false invoices and improperly used construction project funds.

¶29 In Count Three for Fraud and Misrepresentation, all allegations are tied directly and only to the construction project. The same is true for the Count Four claim for Breach of Express Warranty[7], where Penn Grand alleges that HomeRiver breached express warranties in performing the construction work, which was "negligently performed, improper, inadequate, incomplete, defective[,] substandard and against code." And it is also true for the Breach of Implied Warranty claim in Count Five where Penn Grand alleges that HomeRiver, "as construction manager," breached certain implied warranties of habitability and fitness "related to the construction work performed on the Penn Grand Apartments."

¶30 In Count Six, "Negligent Construction and Supervision of Construction," Penn Grand alleges that HomeRiver breached its duty to perform the construction at the apartments in a proper and workmanlike manner, free from defects."[8]

¶31 The allegations in Counts One, Two, Three, Four (Breach of Express Warranty), Five and Six are directed exclusively to the terms of the parties' construction management agreement. The allegations in those counts do not arise from the Property Management Agreement, depend on the existence of that agreement, require interpretation of that agreement, or even involve the same operative facts as Penn Grand's claim for breach of that agreement. Penn Grand's claims, as pled in those counts, fall outside the scope of the Property Management Agreement and its forum selection clause. Under this record, the district court's judgment dismissing Counts One through Six was legally incorrect.

¶32 Count Eight, which seeks an accounting, contains allegations against HomeRiver that arise out of both of the parties' agreements. The allegation against HomeRiver addressing its duty to manage payments and use them for "actual and reasonable construction costs" arises from the construction management agreement. Count Eight also addresses the alleged breach of HomeRiver's duty to track rental payments, which clearly has its factual basis in the Property Management Agreement.

¶33 There are other allegations in Penn Grand's petition that clearly have their factual basis within the Property Management Agreement. Penn Grand alleges that HomeRiver failed to return apartment security deposits. In Count Four for "Conversion," Penn Grand also alleges that, upon Penn Grand's termination of the Property Management Agreement, HomeRiver refused a demand to return rental proceeds and "certain documents and other materials belonging to the apartment's [sic] operations."

¶34 All of the claims in the first Count Four (for Conversion), and portions of Count Eight fall within the scope of the forum selection clause in the Property Management Agreement. Therefore, those claims "may only be brought in the state or federal courts located in Tennessee."

CONCLUSION

¶35 In its petition, Penn Grand asserted claims against HomeRiver in Count Four (Conversion) and in parts of Count Eight that arise directly from the Property Management Agreement and fall within the scope of that agreement's forum selection clause. We affirm that portion of the district court's judgment dismissing those counts.

¶36 The district court erred in dismissing Counts One, Two, Three, Four (Breach of Express Warranty), Five and Six of Penn Grand's petition. Those counts arise from the subsequent, separate and distinct agreement between the parties regarding a large-scale construction project and HomeRiver's management of that project. The claims in those counts are beyond the scope of the forum selection clause of the Property Management Agreement, pursuant to which the parties contracted for HomeRiver to provide day-to-day management services for operation of the Penn Grand Apartments.

¶37 Accordingly, this Court affirms the district court's judgment in part. We reverse the judgment in part and remand the matter to the district court for further proceedings consistent with this Opinion.

¶38 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

BARNES, P.J., and RAPP, J., concur.

FOOTNOTES

[1] There is no signed document memorializing the agreement for construction management included in the appellate record. However, testimony at the evidentiary hearing confirms that Penn Grand accepted terms of HomeRiver's construction management proposals, authorized HomeRiver to commence the construction project and paid certain fees and contractor draws.

[2] These allegations regarding termination dates appear in paragraphs 40 and 42 of Penn Grand's petition.

[3] Defendant Story did not appear. The district court found no reason to delay entry of a final, appealable order as to HomeRiver. See 12 O.S.2011 § 994(A).

[4] If the forum selection clause is valid and encompasses the claims, the district court then determines whether public interest factors weigh against enforcement of the forum selection clause. Rawdon v. Starwood Capital Grp., 2019 OK CIV APP 70, ¶¶ 17-21, 453 P.3d 516. Although Rawdon, which was released for publication pursuant to an order of the Court of Civil Appeals, is not precedential authority, it "shall be considered to have persuasive effect." Okla. Sup. Ct. R. 1.200(d)(2), 12 O.S. Supp. 2014, ch. 15, app.

[5] This Opinion does not address Penn Grand's argument that private and public interest factors prevent enforcement of the forum selection clause. Those issues were resolved in HomeRiver's favor by the judgment dismissing it from the lawsuit. See Noyce v. Ratliff Drilling Co., 1989 OK CIV APP 99, ¶ 2, 790 P.2d 1129 (noting that an order granting summary judgment, although stated in general terms, is deemed to include a finding on any and all issues necessary to sustain the judgment). We will not disturb the judgment based on private interest factors because Tucker precludes it. Tucker, 2014 OK 112, ¶ 32. The record before us does not establish any reason to disturb the judgment on public policy grounds.

[6] One of the cited cases is Hawk Enters., Inc. v. Cash America Int'l, Inc., 2012 OK CIV APP 66, 282 P.3d 786. In Hawk, this Court held that a choice of law provision covering all matters relating to "validity, construction, performance, and enforcement" in a franchise agreement did not extend to the plaintiff's tortious interference claim against the close affiliate/guarantor of that agreement because the provision's language was "not broad enough" to reach the tort claim. Id. ¶ 10. The contractual obligation fundamental to the plaintiff's claim was the right to operate pursuant to the grant of franchise within an exclusive territory.

[7] Penn Grand has mis-numbered the Counts in its petition. The petition contains two "Count Four" sections. The first Count Four, on page 10 of the petition, is for Conversion. The second Count Four, on page 11, is for Breach of Express Warranty.

[8] In Count Seven, which asserts claims against Defendant Story only, Penn Grand alleges Story breached a master construction agreement, which Penn Grand had entered into with Story "at the request and upon the advice and assurance of Defendant HomeRiver."






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1989 OK CIV APP 99, 790 P.2d 1129, 61 OBJ 1491, Noyce v. Ratliff Drilling Co.
Discussed
 2012 OK CIV APP 66, 282 P.3d 786, HAWK ENTERPRISES, INC. v. CASH AMERICA INTERNATIONAL, INC.
Discussed
 2019 OK CIV APP 70, 453 P.3d 516, RAWDON v. STARWOOD CAPITAL GROUP
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 2003 OK 5, 63 P.3d 541, PITCO PRODUCTION COMPANY v. CHAPARRAL ENERGY, INC.
Discussed
 2005 OK 40, 115 P.3d 856, GEICO GENERAL INSURANCE CO. v. NORTHWESTERN PACIFIC INDEMNITY CO.
Discussed
 1996 OK 48, 914 P.2d 1051, 67 OBJ 1173, Carmichael v. Beller
Discussed
 1996 OK 125, 932 P.2d 1100, 67 OBJ 3566, Neil Acquisition, L.L.C. v. Wingrod Investment Corp.
Discussed
 2014 OK 112, 341 P.3d 673, TUCKER v. THE COCHRAN FIRM-CRIMINAL DEFENSE BIRMINGHAM L.L.C.
Discussed at Length
 2015 OK 6, 345 P.3d 357, HORTON v. HAMILTON
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 994, Procedure When There is More Than One Claim or Party - Final Judgment
Cited
 12 O.S. 2012, Defenses and Objections - When and How Presented - By Pleading or Motion
Discussed


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA