2001 OK 38

**Edith Victoria GATES and Sherry I. Gates, Appellants,**

**Edith Victoria Gates, as mother and next friend of Kasey Gates, a minor, Plaintiff,**

**v.**

**Christa Dian ELLER, Defendant,**

**Prudential Property and Casualty Insurance Company, Appellee.**

**No. 94,123.**

Supreme Court of Oklahoma.

April 24, 2001.

Robert C. Smith, Jr., Michael S. Peters, Oklahoma City, OK, for appellants.

Gerald E. Durbin, II, Frances J. Stanton, Oklahoma City, OK, for appellee.

BOUDREAU, Justice:

¶1 This is an appeal from an order granting summary judgment in favor of the uninsured motorist insurer. The dispositive question is: Did the motor vehicle operated by the tortfeasor, for which there was an effective automobile liability insurance policy in an amount greater than the damages claimed, become an uninsured motor vehicle under 36 O.S.Supp.1994, § 3636 when the plaintiffs did not timely commence an action against the tortfeasor? We answer in the negative and, accordingly, affirm the trial court's summary judgment.

## I. BACKGROUND

¶2 On November 19, 1994, the automobile driven by Christa Dian Eller (Eller) collided with the automobile driven by Edith Victoria Gates. At the time of the collision, Pauline J. Gates, Sherry I. Gates, and Kasey Gates, a minor, were passengers in the Gates automobile. Eller had liability insurance in the amount of $25,000.00 per person and $50,000.00 per accident. Pauline J. Gates owned the automobile driven by Edith which was covered by a liability insurance policy, with uninsured motorist coverage, issued by Prudential Property and Casualty Insurance Company (Prudential).

¶3 On January 27, 1995, the driver and passengers of the Gates automobile filed an action against Eller, the alleged tortfeasor, and Prudential, the uninsured motorist insurer. Pauline J. Gates subsequently dismissed her claims against Eller and Prudential, with prejudice. On November 29, 1995, the remaining three plaintiffs also dismissed their claims against both defendants, without prejudice. The remaining three plaintiffs later filed a second action against Eller and Prudential on December 3, 1996.

¶4 Eller responded to the second action with a motion to dismiss. The trial court dismissed the claims of Edith and Sherry Gates against Eller as untimely filed,[1] but did not dismiss the minor plaintiff's claim against Eller. The minor plaintiff secured a judgment against Eller in the amount of $538.00, plus interest and costs.[2]

¶5 Prudential moved for summary judgment against Edith and Sherry Gates (plaintiffs). In its motion, Prudential represented that the plaintiffs concede their damages did

---

1. The dismissal order, filed March 28, 1997, sustained "Defendant's Motion to Dismiss ... for failure to state a claim." In their respective summary judgment filings in the trial court, the parties represented that the claims against Eller were dismissed "... as the statute of limitations had run...." The parties make similar representations to this Court—that plaintiffs dismissed their original action on November 29, 1995, and filed their second action on December 3, 1996, outside the one-year time allowed in the saving statute, 12 O.S.1991, § 100.

2. Plaintiffs rely upon this adjudication as conclusive proof that they are legally entitled to recover damages from Eller.

not exceed the liability limits of the tortfeasor's insurance policy. Accordingly, Prudential argued it was entitled to judgment on plaintiffs' uninsured motorist claims because plaintiffs could not establish the uninsured status of the tortfeasor's motor vehicle, a precondition to recovery.

¶ 6 In opposing summary judgment, plaintiffs did not contest Prudential's representation of the facts.[3] Plaintiffs asserted that the proceeds under the tortfeasor's liability insurance were unavailable because the statute of limitations had expired on their tort claims against the tortfeasor. They argued that since the liability of the tortfeasor has been adjudicated in the judgment secured by the minor plaintiff and since the proceeds of the tortfeasor's liability insurance are unavailable, they have a right to recover under the provisions of the uninsured motorist insurance.

¶ 7 The trial court granted summary judgment in favor of Prudential. Plaintiffs appealed. The Court of Civil Appeals reversed the judgment, finding the undisputed facts establish that the plaintiffs are entitled to recover under the uninsured motorist coverage because the tortfeasor's liability coverage is no longer available as the statute of limitation has expired. This Court granted Prudential's petition for certiorari review.

## II. STANDARD OF REVIEW

¶ 8 A summary judgment disposes solely of issues of law and therefore, it is reviewable by a *de novo* standard.[4] In a *de novo* review, we have plenary, independent and non-deferential authority to determine whether the trial court erred in its application of the law and whether there is any genuine issue of material fact.[5]

## III. CONTENTIONS

¶ 9 On certiorari, Prudential contends it has no liability to plaintiffs, as a matter of law, because the undisputed facts reveal that the vehicle operated by the tortfeasor was not an uninsured motor vehicle. In response, plaintiffs contend that the tortfeasor's motor vehicle became uninsured when they (plaintiffs) failed to timely file a tort action against the tortfeasor. According to plaintiffs, the proceeds under the tortfeasor's liability insurance were no longer available to them at that point and therefore they have a right to recover uninsured motorist benefits from Prudential.

¶ 10 In pressing their argument, plaintiffs rely on *Burch v. Allstate Insurance Co.*[6] In *Burch,* we answered a federal certified question as to whether an uninsured motorist insurer is liable for the entire amount of an injured insured's claim where the insured failed to timely sue the uninsured tortfeasor.[7] *Burch* held that an uninsured motorist insurer is directly and primarily liable for the entire loss of its injured insured from the first dollar up to the policy limits except where the insured affirmatively destroys the insurer's subrogation right.[8] Plaintiffs contend that insomuch as they did not affirmatively destroy Prudential's subrogation right, Prudential became obligated to them for

---

3. We note that plaintiffs' summary of the case in their petition in error amounts to an acknowledgment that their damages would not exceed the limits of tortfeasor Eller's policy. Further, plaintiffs' argument in this appeal is tantamount to a tacit concession of the fact that the damages claimed did not exceed the tortfeasor's liability insurance limits under *Knox v. Eason Oil Co.,* 1942 OK 212, 190 Okla. 627, 126 P.2d 247.

4. *Manley v. Brown,* 1999 OK 79, 989 P.2d 448, 455.

5. *Kluver v. Weatherford Hospital Authority,* 1993 OK 85, 859 P.2d 1081, 1084.

6. 1998 OK 129, 977 P.2d 1057.

7. *Burch* involved a plaintiff (Mrs. Burch) whose loss amounted to $50,000.00 and an underinsured tortfeasor (Mr. Burch) whose liability limit was $10,000.00. Both the liability coverage and the uninsured motorist coverage were issued in a single policy. Mrs. Burch failed to timely sue Mr. Burch. Their insurer refused to pay the first $10,000.00 of Mrs. Burch's loss under the uninsured motorist coverage, which, according to the insurer, could have been paid under the liability coverage. The insurer was willing to pay the remaining $40,000.00 under the uninsured motorist coverage. *Burch v. Allstate Insurance Co.,* 1998 OK 129 at ¶ 4 and ¶ 5, 977 P.2d at 1059.

8. *Burch v. Allstate Insurance Co.,* 1998 OK 129 at ¶ 2 and ¶ 13, 977 P.2d at 1058 and 1064.

their entire loss when the tortfeasor's liability insurance became unavailable.

## IV. AN INSURED SEEKING TO RECOVER UNINSURED MOTORIST INSURANCE BENEFITS MUST ESTABLISH THE UNINSURED STATUS OF THE TORTFEASOR'S MOTOR VEHICLE.

¶ 11 The purpose of our uninsured motorist statute [9] is to assure insurance coverage for the protection of the insured from the effects of personal injury caused by a motorist who either carries no insurance or has inadequate coverage.[10] Accordingly, the statute provides that bodily injury damages covered by uninsured motorist insurance must arise out of the ownership, maintenance or use of an **uninsured motor vehicle**.[11]

While the statute does not precisely define the term **uninsured motor vehicle,** the term obviously includes a motor vehicle without liability insurance. It also encompasses a motor vehicle with liability insurance: 1) where the liability insurer is unable to make payment because of insolvency; and 2) where the liability limits are less than the amount of the claim (underinsured).[12] Under our statutory scheme, the uninsured motorist insurer's obligation to its insured is identical regardless of the underlying reason for the classification of the vehicle as uninsured.[13]

¶ 12 Our uninsured motorist statute imposes upon an injured insured seeking to recover uninsured motorist insurance benefits the burden of proving the uninsured status of the tortfeasor's motor vehicle.[14] Our

9.  36 O.S.Supp.2000, § 3636.

10.  *Burch v. Allstate Insurance Co.,* 1998 OK 129 at ¶ 13, 977 P.2d at 1063; *Bohannan v. Allstate Insurance Company,* 1991 OK 64, ¶ 13, 820 P.2d 787, 792; and *Uptegraft v. Home Insurance Company,* 1983 OK 41, ¶ 6, 662 P.2d 681, 684.

11.  The 1994 version of the statute, applicable herein, is unchanged in the most recent publication at 36 O.S.Supp.2000, § 3636. Pertinent provisions of § 3636 read as follows:
    A.  No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued, delivered, renewed, or extended in this state with respect to a motor vehicle registered or principally garaged in this state unless the policy includes the coverage described in subsection B of this section.
    B.  The policy referred to in subsection A of this section shall provide coverage therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom....
    C.  For the purposes of this coverage the term "uninsured motor vehicle" shall include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency. For the purposes of this coverage the term "uninsured motor vehicle" shall also include an insured motor vehicle, the liability limits of which are less than the amount of the claim of the person or persons making such claim, regardless of the amount of coverage of either of the parties in relation to each other.

    D.  An insurer's insolvency protection shall be applicable only to accidents occurring during a policy period in which its insured's uninsured motorist coverage is in effect where the liability insurer of the tort-feasor becomes insolvent within one (1) year after such an accident. Nothing herein contained shall be construed to prevent any insurer from according insolvency protection under terms and conditions more favorable to its insured than is provided hereunder.
    ... H. The offer of the coverage required by subsection B of this section shall be in the following form....
    Uninsured motorist coverage, unless otherwise provided in your policy, pays for bodily injury damages to you, members of your family who live with you, and other people riding in your car who are injured by: (1) an uninsured motorist, (2) a hit-and-run motorist, or (3) an insured motorist who does not have enough liability insurance to pay for bodily injury damages to any insured person....

12.  *Tidmore v. Fullman,* 1982 OK 73, ¶ 8, 646 P.2d 1278, 1280, observed the legislative definition of "uninsured motor vehicle" includes vehicles which are uninsured, hit-and-run vehicles, insured vehicles where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within policy limits by reason of insolvency of the insurer.

13.  *Burch v. Allstate Insurance Co.,* 1998 OK 129 at ¶ 13, 977 P.2d at 1064.

14.  *Brown v. United Services Automobile Association,* 1984 OK 55, ¶ 28, 684 P.2d 1195, 1198, answered federal certified questions relating to the liability of the uninsured motorist insurer in a hit-and-run fact situation. *Brown* held that an injured insured who is seeking to recover under

holding in *Burch* did not diminish this burden in any respect. To the contrary, *Burch* observed that an injured insured must demonstrate that the **preconditions for loss under the uninsured motorist coverage exist** before he or she can recover under the primary uninsured motorist coverage.[15]

## V. THE FAILURE OF THE INSURED TO COMMENCE AN ACTION AGAINST THE TORTFEASOR WITHIN THE STATUTE OF LIMITATION DOES NOT CREATE AN UNINSURED STATUS.

¶13 Plaintiffs rely upon *Burch* and *Uptegraft v. Home Insurance Company*[16] for their argument that the tortfeasor's **insured motor vehicle becomes uninsured** if the insured fails to commence an action against the tortfeasor within the statute of limitation. Plaintiffs contend that because the tortfeasor's liability insurance is now unavailable, they have a right to recover uninsured motorist benefits from Prudential.

¶14 In *Uptegraft*, we answered a federal certified question as to whether the uninsured motorist insurer is discharged from liability under its policy where the injured insured fails to timely sue the uninsured motorist tortfeasor.[17] The insurer in *Uptegraft* argued that the failure of the insured to timely commence a tort action destroyed its subrogation right and accordingly should discharge it from liability to the insured. *Uptegraft* rejected that argument [18] and held that failure of the injured insured to timely commence an action against the uninsured tortfeasor does not ipso facto discharge the uninsured motorist insurer from liability.[19] *Burch* reaffirmed this holding in *Uptegraft*.[20]

¶15 Plaintiffs misconstrue *Uptegraft* and *Burch* when they offer them as support for their argument that the tortfeasor's **insured motor vehicle becomes uninsured** when the insured fails to commence an action against the tortfeasor within the statute of limitation. *Uptegraft* and *Burch* stand for the proposition that an insured who passively permits the tort statute of limitation to expire does not discharge the uninsured motorist insurer from liability. They do not support plaintiffs' proposition that the same passive act on the part of the insured creates an uninsured status where an insured status previously existed. Stated otherwise, an insured motor vehicle does not become an uninsured motor vehicle simply because the insured allows the statute of limitation to expire causing the tortfeasor's liability insurance to become unavailable.

## VI. CONCLUSION

¶16 An insured seeking to recover uninsured motorist insurance benefits must es-

---

an uninsured motorist endorsement has the burden of proving the other motor vehicle was **uninsured**, unless the insurer contractually assumed the burden of proving the other motor vehicle was **insured**. The *Brown* exception is not involved in this cause. The insurance contract is not in the appellate record and the parties do not rest their arguments on any contract provision.

**15.** *Burch v. Allstate Insurance Co.*, 1998 OK 129 at ¶13, 977 P.2d at 1064.

**16.** Note 10, *supra*.

**17.** *Uptegraft v. Home Insurance Company*, 1983 OK 41 at ¶1, 662 P.2d at 683. In *Uptegraft*, the plaintiff, while driving his employer's vehicle, was injured in a collision with an uninsured motorist. The plaintiff did not bring an action against the uninsured tortfeasor within the two-year limitation. More than three years after the collision, the injured employee filed an action to recover uninsured motorist benefits under his employer's coverage and his own personal coverage.

**18.** *Uptegraft v. Home Insurance Company*, 1983 OK 41 at ¶14 and ¶15, 662 P.2d at 686–687. The insurer in *Uptegraft* argued that the case was analogous to *Porter v. MFA Mutual Insurance Co.*, 1982 OK 23, 643 P.2d 302, wherein we held that a release and settlement discharged the uninsured motorist insurer's liability because it operated to destroy the insurer's subrogation right. *Uptegraft* factually distinguished *Porter* and rejected the argument because *Uptegraft* did not involve any affirmative act or prejudicial conduct by the insured which operated to destroy the insurer's subrogation rights. Accordingly, *Uptegraft* said that the mere failure of the insured to commence an action against the tortfeasor within the statute of limitation will not afford a basis for invoking the *Porter* doctrine to effect a discharge of the uninsured motorist insurer's liability.

**19.** *Uptegraft v. Home Insurance Company*, 1983 OK 41 at ¶16, 662 P.2d at 687.

**20.** *Burch v. Allstate Insurance Co.*, 1998 OK 129 at ¶16, 977 P.2d at 1069.

tablish the uninsured status of the tortfeasor's motor vehicle. An insured does not establish an uninsured status by simply failing to commence an action against the tortfeasor within the statute of limitation. Accordingly, the trial court correctly granted summary judgment to Prudential.

**CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL APPEALS VACATED; TRIAL COURT'S SUMMARY JUDGMENT AFFIRMED.**

¶ 17 ALL JUSTICES CONCUR.