2005 OK 40

**GEICO GENERAL INSURANCE COMPANY, Plaintiff–Petitioner,**

v.

**NORTHWESTERN PACIFIC INDEMNITY COMPANY, Defendant–Respondent.**

No. 100,731.

Supreme Court of Oklahoma.

June 14, 2005.

Tom Cooper, Oklahoma City, OK, for Plaintiff–Petitioner.

F. Thomas Cordell Jr. and Catharine Vaughan Ewing, Chickasha, OK, for Defendant–Respondent.

WATT, C.J.

¶ 1 The United States District Court for the Western District of Oklahoma has certified a question of state law to this Court under the Oklahoma Revised Uniform Certification of Questions of Law Act, 20 O.S.2001 §§ 1601, et seq. The federal court asks:

"Is an excess/umbrella policy included in determining the liability limits of an uninsured motor vehicle under 36 O.S. § 3636(C)?"

We answer the question, "no."

### FACTS AND PROCEDURAL BACKGROUND

¶ 2 Travis Chubbuck, the 16 year old son of Gary and June Chubbuck, was involved in an automobile accident on May 28, 2002 while driving a car owned by June Chubbuck.

Jennifer Munholland, also 16, was a passenger in the car that Travis was driving when they were struck by a truck that apparently had the right of way. As a result of the accident both Travis and Jennifer were killed. Jennifer Munholland's estate brought a wrongful death suit against Travis Chubbuck's estate.

¶ 3 GEICO, the plaintiff here, had issued a family automobile policy to June Chubbuck. The GEICO policy provided automobile insurance in the single limit amount of $300,000 plus an additional single limit amount of $300,000 in "UM," that is, uninsured-under insured motorist, coverage. The Chubbucks also had an excess liability policy with Northwestern Pacific Indemnity Company. The NPIC excess policy provided for $2,000,000 additional coverage in excess of the coverage of the GEICO policy.

¶ 4 The parties agree that Travis Chubbuck was an insured under both the GEICO and NPIC policies and that Jennifer Munholland was an insured under the GEICO policy. There is also no dispute that the GEICO policy provided primary coverage and that the NPIC policy provided excess coverage.

¶ 5 The Munholland wrongful death claim was settled by mediation for $800,000. GEICO paid the policy limits of both its $300,000 automobile liability policy and its $300,000 UM coverage, a total of $600,000. NPIC paid the excess of $200,000. The reasonableness of the settlement is undisputed.

¶ 6 GEICO then sued NPIC for equitable subrogation in the United States District Court for the Western District of Oklahoma. The federal court then certified to this Court the Certified State Question of Law presented here.

¶ 7 GEICO claims that it should not have had to pay its $300,000 UM coverage. GEICO contends that in determining whether the Chubbuck's car was an "uninsured motor vehicle," as that term is defined in 36 O.S. 2001 § 3636(C),[1] the Chubbuck's excess lia-

---

1. Title 36 O.S. § 3636 has been amended on several occasions since 2001 but subsection C of the statute was not changed. Section 3636(C) provides:

For the purposes of this coverage the term "uninsured motor vehicle" shall include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured with-

bility policy with NPIC should have been taken into account. Thus, GEICO claims it should have had to pay only $300,000 of the $800,000 settlement and NPIC should have had to pay the remaining $500,000.

¶ 8 In response to GEICO's claim, NPIC argues that the legislature did not intend for § 3636(C) to encompass excess liability policies and that primary UM coverage is immediately triggered upon exhaustion of the primary automobile liability coverage.

¶ 9 Both GEICO and NPIC filed motions for summary judgment in the federal court. The federal court, having found that an issue of first impression was presented, then certified the issue to this Court in the form of its Certified Question of State Law.

## DISCUSSION

### I.

*Whether uninsured motorist coverage was required under the terms of the NPIC excess contract is a question of law, not fact.*

■ ¶ 10 GEICO candidly admits "that excess insurers are typically liable only after the primary coverage has been exhausted." This admission would answer the question certified to us but GEICO claims that whether the UM coverage mandated by 36 O.S. 2001 § 3636, which it provided to the Chubbucks was "required" by NPIC's excess policy is an unresolved fact issue, reserved for determination by the federal court. We disagree.

■ ¶ 11 Under Oklahoma law, "If language of a contract is clear and free of ambiguity the court is to interpret it as a matter of law.... Whether a contract is ambiguous and hence requires extrinsic evidence to clarify the doubt is a question of law for the courts." *Pitco Production Company v. Chaparral Energy, Inc.*, 2003 OK 5, ¶ 12, 63 P.3d 541, 545. [Footnotes omitted.] Further, "The mere fact that the parties disagree or press for a different construction

does not make an agreement ambiguous." *Pitco* at ¶ 14.

¶ 12 NPIC's excess contract provides:

Regardless of whether other primary underlying insurance may be available in the event of a claim or loss, it is a condition of this part of your policy that you and your family members *must maintain in full effect primary underlying liability insurance of the types and in at least the amounts set forth below ...:*

Uninsured motorists protection in the minimum amount of $250,000/$500,000 bodily injury or $300,000 single limit each occurrence.

[Emphasis added.] The policy's language is unambiguous. Thus, its meaning is a matter of law: the UM coverage contained in GEICO's automobile policy was part of the primary coverage and NPIC's policy was secondary to it. Further, in order to fully answer the question certified to us here it was necessary to first determine whether NPIC's policy required that UM coverage would be part of the primary coverage to which the NPIC policy was excess. Finally, GEICO's contention that whether the UM coverage was part of the primary coverage was an issue of fact is not supported by the language of NPIC's policy, which is clear and unambiguous, nor by applicable Oklahoma law.

II.   *Title 36 O.S.2001 § 3636 does not contemplate that excess liability policies of the sort issued by NPIC are to be included in determining the "liability limits" of "an insured motor vehicle," as those terms are used in § 3636.*

■ ¶ 13 We held in *Moser v. Liberty Mutual Ins. Co.*, 1986 OK 78, ¶ 5, n. 8, 731 P.2d 406, that 36 O.S.2001 § 3636 applies only to "primary liability policies insuring against liability arising from ownership, maintenance, or operation of an automobile...." We also held, "We find the legislative intent to be clear in this case. The uninsured motorist provisions apply to all

in the limits specified therein because of insolvency. For the purposes of this coverage the term "uninsured motor vehicle" shall also include an insured motor vehicle, the liability

limits of which are less than the amount of the claim of the person or persons making such claim, regardless of the amount of coverage of either of the parties in relation to each other.

automobile liability insurance policies (or motor vehicle liability policies as defined in 47 O.S. § 7–324) *but not to 'umbrella' policies. . . . " Moser* at ¶ 8. [Footnote omitted, emphasis added.] The "umbrella" policy we considered in *Moser* was an excess liability policy similar to NPIC's policy. The facts in *Moser* differed from those presented here— in *Moser* the issue was whether the requirement of § 3636 that UM coverage must be expressly rejected in writing applied to excess liability policies. We held that umbrella policies are not covered by § 3636 because such policies are "at most tangentially related to automobile liability." *Moser* at ¶ 10, n. 16. Despite its differences from the situation presented here, in *Moser* we clearly stated there that § 3636 does not apply to excess liability policies of the sort at issue here. Thus, we find the *Moser* opinion instructive and hold that § 3636(C) does not apply to excess liability policies.

¶ 14 GEICO also relies on *Boyer v. Oklahoma Farm Bureau Mut. Ins. Co.,* 1995 OK CIV APP 102, 902 P.2d 83; *Gates v. Eller,* 2001 OK 38, 22 P.3d 1215; and *Burch v. Allstate Ins. Co.,* 1998 OK 129, 977 P.2d 1057. Our analysis of these opinions demonstrates that each addressed an issue other than the priority of payment between a primary UM policy and an excess liability policy. In *Boyer* the tortfeasor had liability insurance that far exceeded the amount of plaintiff's claim. Thus, priority of payment was not an issue. The tortfeasor had no excess liability insurance in either *Burch* or *Gates.* Thus, those opinions are not relevant to the issues presented here, either.

### III. Opinions cited by GEICO from other jurisdictions are inapposite to the issue presented here.

¶ 15 GEICO relies on several opinions from other jurisdictions in support of its claim that excess liability carriers should pay their coverages before primary UM insurers will be required to pay under their policies.[2]

We disagree because in none of those opinions was the *priority* of payment between a UM policy and an excess liability policy considered. Instead, each case involved whether there was a "gap" between the tortfeasor's policy limit and the UM carrier's policy limit. As will be shown in the discussion of each of these opinions, the state law applicable in each case required that there be such a "gap," so the issue of priority of payment was not considered in any of them.

¶ 16 GEICO relies on four opinions that interpreted either Connecticut, Rhode Island or Pennsylvania law: *Murphy v. Safety Ins. Co.,* 429 Mass. 517, 709 N.E.2d 410, (1999); *Schilling v. Safeco Ins. Co.,* 2002 WL 522982 (Conn.2002); *Pennsylvania General Ins. Co. v. Morris,* 599 A.2d 1042 (R.I.1991); and *State Farm Fire and Cas. Ins. Co. v. Sayles,* 289 F.3d 181 (interpreting Connecticut law) (2d Cir.2002). These opinions are inapposite because, as noted, in each of those states the uninsured motorist statutes provide so called "gap" coverage. As will be explained, there was no issue as to the priority of payment between a UM policy and an excess liability policy.

¶ 17 In "gap" coverage states, unlike Oklahoma, an insured is allowed to recover under his UM coverage only if the tortfeasor's policy limit is less than the injured insured's UM policy limit. For example, if an injured insured has $100,000 in damages, the tortfeasor has a $10,000 policy limit, and the injured insured's UM policy limit is $50,000, the insured can collect only $40,000 from his UM carrier. But if the tortfeasor has $75,000 in coverage the insured can collect nothing from his UM carrier. This is so because there is no "gap," as the tortfeasor's $75,000 policy limit exceeds the UM carrier's $50,000 policy limit. In short, in "gap" states unless the tortfeasor's policy limit is less than the UM carrier's policy limit, the UM carrier is exempted from payment as a matter of law.

2. The cases from other jurisdictions that GEICO relies on are: *Murphy v. Safety Ins. Co.,* 429 Mass. 517, 709 N.E.2d 410, (1999); *Schilling v. Safeco Ins. Co.,* 2002 WL 522982 (Conn.2002); *Pennsylvania General Ins. Co. v. Morris,* 599 A.2d 1042 (R.I.1991); *State Farm Fire and Cas. Ins.*

*Co. v. Sayles,* 289 F.3d 181 (interpreting Connecticut law) (2d Cir.2002); *French v. New Jersey School Bd. Assoc. Ins. Group,* 149 N.J. 478, 694 A.2d 1008 (1997); and *Government Employees Ins. Co. v. Annamanthadoo,* 302 A.D.2d 460, 755 N.Y.S.2d 404 (2003).

¶18 In each of the four opinions cited above, the issue was whether the injured insured, who was the plaintiff in each case, was entitled to have the court ignore $1,000,000 payments the insured had already received under the tortfeasor's excess liability policy in order to create a "gap" and make the insured's UM carrier liable under the UM policy. There was no issue whether the proceeds of the UM policy or the excess liability coverage should be paid first because the injured insured claimed that both carriers should pay their policy limits. Thus, these opinions shed no light on the issue at hand.

¶19 *French v. New Jersey School Bd. Assoc. Ins. Group*, 149 N.J. 478, 694 A.2d 1008 (1997), is also inapposite. There, plaintiff, the injured insured, was trying to tack her employer's UM coverage to her personal UM policy's coverage so that there would be a "gap" between the tortfeasor's policy limits and plaintiff could collect from the UM carriers. Once again, there was no issue as to the priority of payment between a UM carrier and an excess carrier.

¶20 In *Government Employees Ins. Co. v. Annamanthadoo*, 302 A.D.2d 460, 755 N.Y.S.2d 404 (2003), the excess liability carrier had disclaimed but the tortfeasor's total coverage would have still been less than plaintiff's UM coverage even if the excess carrier had not disclaimed. The New York court accepted the liability carrier's disclaimer so it did not reach the issue that would have been pertinent here: whether excess coverage must be exhausted as a prerequisite to the UM carrier becoming liable on its policy.

## CONCLUSION

¶21 In order to fully answer the question certified to us here it was necessary to first determine whether NPIC's policy required that UM coverage would be part of the primary coverage to which the NPIC policy was excess. As a matter of Oklahoma law NPIC's excess liability policy required UM coverage of the sort that the Chubbucks bought from GEICO. Further, such coverage was primary while NPIC's excess coverage was secondary. "If language of a contract is clear and free of ambiguity the court is to interpret it as a matter of law....

Whether a contract is ambiguous and hence requires extrinsic evidence to clarify the doubt is a question of law for the courts." *Pitco Production Company v/ Chaparral Energy, Inc.*, 2003 OK 5, ¶12, 63 P.3d 541, 545. [Footnotes omitted.] NPIC's policy language was unambiguous. Thus, we declare its meaning is a matter of law: the UM coverage contained in GEICO's automobile policy was part of the primary coverage and NPIC's policy was secondary to it.

¶22 Title 36 O.S.2001 § 3636 does not contemplate that excess liability policies of the sort issued by NPIC are to be included in determining the "liability limits" of "an insured motor vehicle," as those terms are used in § 3636. Section 3636 applies only to "primary liability policies insuring against liability arising from ownership, maintenance, or operation of an automobile...." *Moser v. Liberty Mutual Ins. Co.*, 1986 OK 78, ¶5, n. 8, 731 P.2d 406. "The uninsured motorist provisions apply to all automobile liability insurance policies (or motor vehicle liability policies as defined in 47 O.S. § 7–324) *but not to 'umbrella' policies....*" *Moser* at ¶8. [Footnote omitted, emphasis added.] Despite differences in *Moser* from the situation presented here, we clearly stated there that § 3636 does not apply to excess liability policies of the sort at issue here. Thus, we find the *Moser* opinion instructive and hold that § 3636(C) does not apply to excess liability policies.

¶23 The opinions cited by GEICO from other jurisdictions are inapposite to the issue presented here because those opinions involved the interpretation of "gap" coverage UM statutes. None of those opinions considered the issue before us here: the priority of payment between a UM carrier and an excess liability carrier.

**CERTIFIED QUESTION ANSWERED**

WINCHESTER, V.C.J., OPALA, KAUGER, EDMONDSON, TAYLOR, COLBERT, JJ.—concur.

LAVENDER, HARGRAVE, JJ.—concur in result.