OSCN Found Document:CYANOSTAR ENERGY, INC. v. CHESAPEAKE EXPLORATION, L.L.C.

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 CYANOSTAR ENERGY, INC. v. CHESAPEAKE EXPLORATION, L.L.C.
2014 OK CIV APP 7
Case Number: 111639
Decided: 11/21/2013
Mandate Issued: 01/03/2014
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2014 OK CIV APP 7, __ P.3d __

CYANOSTAR ENERGY, INC., OXLEY RESOURCES L.L.C., TOM HOEFLING, LOWRY EXPLORATION, INC., RICHARD GARMAKER AND JOHN WILSON Plaintiffs/Appellants,
v.
CHESAPEAKE EXPLORATION, L.L.C., Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY, OKLAHOMA

HONORABLE LINDA G. MORRISSEY, JUDGE

AFFIRMED

Thomas M. Ladner, Ladner & Eldredge, Tulsa, Oklahoma, for Appellants,
Robert H. Gilliland, Jr., Philip D. Hart, Jared M. Burden, McAfee & Taft, Oklahoma City, Oklahoma, for Appellee.

Larry Joplin, Chief Judge:

¶1 Plaintiffs/Appellants Cyanostar Energy, Inc., Oxley Resources L.L.C., Tom Hoefling, Lowry Exploration, Inc., Richard Garmaker and John Wilson (individually, by name, or collectively, Plaintiffs) seek review of the trial court's order granting the motion for summary judgment of Defendant/Appellee Chesapeake Exploration, L.L.C. (Defendant) on Plaintiffs' claims for declaratory judgment and breach of contract, and Defendant's counterclaim for a declaratory judgment construing the parties' contract. In this appeal, Plaintiffs assert the trial court erred as a matter of law and fact in granting the motion for summary judgment of Defendants.

¶2 There is no dispute of the basic material facts. Plaintiffs and Defendant executed an Exploration Agreement dated November 15, 2004. The Exploration Agreement recognized an "area of mutual interest" (AMI), and, with respect to the leasing of acreage within the AMI, the Exploration Agreement provided:

[A]ny acreage acquired within the AMI and outside the Drillsite Sections after the closing date will be offered to the other Parties and those Parties shall have the option to take their proportionate share of the interest based on the percentages in Article I by paying their proportionate share of actual acquisition costs within fifteen (15) days of receipt of offering.

¶3 Defendant subsequently acquired acreage within the AMI. On February 18, 2011, Chesapeake offered the leasehold acreage within the AMI, Section 10, to the other parties. On March 8, 2011, Chesapeake offered the leasehold acreage within the AMI, Sections 11 and 14, to the other parties.

¶4 Plaintiffs elected to accept their proportionate shares of the acreage offered by Chesapeake. Penn Virginia, a partner to the agreement, elected to decline the offer of its proportionate share of the acreage offered. Chesapeake did not subsequently offer shares of Penn Virginia's declined acreage to Plaintiffs.

¶5 Plaintiffs then commenced the instant action, seeking a declaration of rights under the Exploration Agreement, and particularly, the AMI provision, and damages for breach of contract. As to the AMI provision, Plaintiffs alleged the AMI provision required Defendant to offer to the remaining parties any acreage declined by any other party, and Defendant's breach of the AMI provision by failing to offer them the acreage declined by Penn Virginia. Defendant answered, denied generally and specifically the allegations of Plaintiffs' petition, and asserted a counterclaim for declaratory judgment, arguing the AMI did not expressly or by implication require the offer of any acreage declined by one party to the others.

¶6 Plaintiffs filed a motion for summary judgment. Plaintiffs asserted the existence of parol evidence demonstrating the parties' intent that declined acreage within the AMI be offered to the remaining parties. Defendant objected, and filed a motion for summary judgment, arguing the express provisions of the AMI did not require the offer of declined acreage to the remaining parties, and parol evidence was not admissible to modify or add to the unambiguous terms of the AMI as to grant rights not expressed by the plain language of the agreement.

¶7 The trial court granted the motion for summary judgment of Defendant, and denied the motion for summary judgment of Plaintiffs, holding:

For the Court to interpret the language as Plaintiffs request would be to add an option that did not exist and to read into the contract words that it does not contain. "Courts cannot supply material stipulations or read into a contract words or terms it does not contain; the law will not make a better contract than the parties themselves have seen fit to enter into, or alter it for benefit of one party to detriment of another." The Court must only interpret the contract as written.

As the language in question makes no reference to an option to acquire shares declined by another party, the court must read that to mean that no such option exists and may not consider any parol evidence introduced by the parties. "A final writing of a contract is assumed to include all of the terms and provisions agreed upon by two parties. If an examination of the 'four corners' of the writing demonstrates that the writing was intended to be a complete and exclusive statement of all terms, extrinsic or parol evidence may not be introduced to show additional consistent terms." As the Court finds the language of the contract to be free of ambiguities, it declines to look beyond the four corners of the writing. When a "contract is complete in itself and, viewed in its entirety, is unambiguous, its language is the only legitimate evidence of what the parties intended."

. . . Plaintiffs request for declaratory judgment, finding that "acquired acreage" under the terms of the Exploration Agreement is to include acreage declined by another partner, is not contained in the writing and should not be so inferred.

(Citations omitted.) Plaintiffs appeal, and the matter stands submitted on the trial court record.[1]

¶8 "Summary judgment is appropriate only where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Wathor v. Mutual Assur. Adm'rs, Inc., 2004 OK 2, ¶4, 87 P.3d 559, 561. (Citation omitted.) "Where a controversy is resolved by summary judgment, the appellate courts review the entire summary judgment record independently and without deference to a lower court," that is, de novo. Lowery v. Echostar Satellite Corp., 2007 OK 38, ¶11, 160 P.3d 959, 963. "Summary judgment will be affirmed only if the appellate court determines that there is no dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Id. "Summary judgment will be reversed if the appellate court determines that reasonable men might reach different conclusions from the undisputed material facts." Id.

¶9 "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." 15 O.S. §154. "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible, . . ." 15 O.S. §155. "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others." 15 O.S. §157. "The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning, unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." 15 O.S. §160. So:

. . . The mere fact the parties disagree or press for a different construction does not make an agreement ambiguous. A contract must be considered as a whole so as to give effect to all its provisions. The language in a contract is to be given its plain and ordinary meaning unless some technical term is used in a manner intended to convey a specific technical concept. If a contract is complete in itself, and when viewed as a totality, is unambiguous, its language is the only legitimate evidence of what the parties intended. That intention cannot be divined from extrinsic evidence but must be gathered from a four-corners' examination of the instrument.

Pitco Production Co. v. Chaparral Energy, Inc., 2003 OK 5, ¶13, 63 P.3d 541, 545-546. (Footnotes omitted.)

¶10 Whether a contract is ambiguous, and whether extrinsic evidence is necessary to resolve an ambiguity, constitute questions of law for the courts. See, e.g., GEICO General Ins. Co. v. Northwestern Pacific Indem. Co., 2005 OK 40, 115 P.3d 856. "In the absence of accident, fraud, or mistake of fact, when the language of a written contract is complete, unambiguous and free from uncertainty as to the parties' intentions, parole evidence of prior representations, contemporaneous agreements or understandings tending to change, contradict, or enlarge the plain terms of the written contract are inadmissible." First Nat. Bank and Trust Co. of Vinita v. Kissee, 1993 OK 96, ¶13, 859 P.2d 502, 506-507. (Footnote omitted.)

¶11 In the present case, the AMI provision expressly requires that, when one of the parties acquires leasehold acreage outside the "drillsite," but within the "area of interest," the leasehold acreage acquired by one of the parties within the "area of interest" "be offered to the other Parties and those Parties shall have the option to take their proportionate share of the interest based on the percentages in Article I by paying their proportionate share of actual acquisition costs to the other parties in the proportion of their ownership." The AMI provision, however, is entirely silent on the consequences of a rejection of the offer by any of the parties, i.e., whether the offeror is required to offer the rejected acreage to the other parties.

¶12 The AMI provision permits, but does not require, any party to accept the offer to purchase any additional leasehold acres. Because the parties were not required to accept any offer of additional acreage, and the parties were free to reject any offer of acreage within the AMI, the very real possibility that additional leasehold acres within the AMI might become available to purchase upon the rejection of any offer is inescapable. This being so, if the parties had intended to require the "re-offer" of rejected acreage, they could have easily provided. The fact is, however, they did not.

¶13 Given this silence, and in the presence of clear and express language requiring only the offer of leasehold acreage within the AMI to the other parties, but permitting the rejection of any offer, any attempt to read into the agreement some requirement of a "re-offer" of rejected acreage would, as the trial court aptly recognized, "add an option that did not exist and to read into the contract words that it does not contain." We therefore hold the trial court did not err in construing the language as unambiguous, and particularly, the language of the AMI provision Exploration Agreement, as not requiring the re-offer of rejected leasehold acreage to the other parties to the Agreement.

¶14 The order of the trial court is AFFIRMED.

BELL, ACTING P.J., and MITCHELL, J. (sitting by designation), concur.

FOOTNOTES

[1] See, Rule 13(h), Rules for District Courts, 12 O.S., Ch. 2, App.; Ok.S.Ct.Rule 1.36, 12 O.S., Ch. 15, App. 1.






 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Supreme Court Cases Cite
Name
Level 1993 OK 96, 859 P.2d 502, 64 OBJ 2159, First Nat. Bank and Trust Co. of Vinita v. Kissee
Discussed 2003 OK 5, 63 P.3d 541, PITCO PRODUCTION COMPANY v. CHAPARRAL ENERGY, INC.
Discussed 2004 OK 2, 87 P.3d 559, WATHOR v. MUTUAL ASSURANCE ADMINISTRATORS, INC.
Discussed 2005 OK 40, 115 P.3d 856, GEICO GENERAL INSURANCE CO. v. NORTHWESTERN PACIFIC INDEMNITY CO.
Discussed 2007 OK 38, 160 P.3d 959, LOWERY v. ECHOSTAR SATELLITE CORP.
Discussed
Title 15. Contracts Cite
Name
Level 15 O.S. 154, Language of Contract Governs
Cited 15 O.S. 155, Intention of Parties Ascertained from Writing
Cited 15 O.S. 157, Whole of Contract Taken Together
Cited 15 O.S. 160, Words of Contract to be Taken in Ordinary Sense - Exceptions
Cited