OSCN Found Document:CYANOSTAR ENERGY, INC. v. CHESAPEAKE EXPLORATION, L.L.C.

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 CYANOSTAR ENERGY, INC. v. CHESAPEAKE EXPLORATION, L.L.C.
2014 OK CIV APP 7
317 P.3d 217
Case Number: 111639
Decided: 11/21/2013
Mandate Issued: 01/03/2014
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2014 OK CIV APP 7, 317 P.3d 217

CYANOSTAR ENERGY, INC., OXLEY RESOURCES L.L.C., TOM HOEFLING, 
LOWRY EXPLORATION, INC., RICHARD GARMAKER AND JOHN WILSON 
Plaintiffs/Appellants,
v.
CHESAPEAKE EXPLORATION, L.L.C., 
Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY, OKLAHOMA
HONORABLE LINDA G. MORRISSEY, JUDGE

AFFIRMED

Thomas M. Ladner, Ladner & Eldredge, Tulsa, Oklahoma, for 
Appellants,
Robert H. Gilliland, Jr., Philip D. Hart, Jared M. Burden, McAfee 
& Taft, Oklahoma City, Oklahoma, for Appellee.


Larry Joplin, Chief Judge:
¶1 Plaintiffs/Appellants Cyanostar Energy, Inc., Oxley Resources L.L.C., Tom 
Hoefling, Lowry Exploration, Inc., Richard Garmaker and John Wilson 
(individually, by name, or collectively, Plaintiffs) seek review of the trial 
court's order granting the motion for summary judgment of Defendant/Appellee 
Chesapeake Exploration, L.L.C. (Defendant) on Plaintiffs' claims for declaratory 
judgment and breach of contract, and Defendant's counterclaim for a declaratory 
judgment construing the parties' contract. In this appeal, Plaintiffs assert the 
trial court erred as a matter of law and fact in granting the motion for summary 
judgment of Defendants.
¶2 There is no dispute of the basic material facts. Plaintiffs and Defendant 
executed an Exploration Agreement dated November 15, 2004. The Exploration 
Agreement recognized an "area of mutual interest" (AMI), and, with respect to 
the leasing of acreage within the AMI, the Exploration Agreement provided:

 
 [A]ny acreage acquired within the AMI and outside the Drillsite Sections 
 after the closing date will be offered to the other Parties and those 
 Parties shall have the option to take their proportionate share of the 
 interest based on the percentages in Article I by paying their proportionate 
 share of actual acquisition costs within fifteen (15) days of receipt of 
 offering.
¶3 Defendant subsequently acquired acreage within the AMI. On February 18, 
2011, Chesapeake offered the leasehold acreage within the AMI, Section 10, to 
the other parties. On March 8, 2011, Chesapeake offered the leasehold acreage 
within the AMI, Sections 11 and 14, to the other parties.
¶4 Plaintiffs elected to accept their proportionate shares of the acreage 
offered by Chesapeake. Penn Virginia, a partner to the agreement, elected to 
decline the offer of its proportionate share of the acreage offered. Chesapeake 
did not subsequently offer shares of Penn Virginia's declined acreage to 
Plaintiffs.
¶5 Plaintiffs then commenced the instant action, seeking a declaration of 
rights under the Exploration Agreement, and particularly, the AMI provision, and 
damages for breach of contract. As to the AMI provision, Plaintiffs alleged the 
AMI provision required Defendant to offer to the remaining parties any acreage 
declined by any other party, and Defendant's breach of the AMI provision by 
failing to offer them the acreage declined by Penn Virginia. Defendant answered, 
denied generally and specifically the allegations of Plaintiffs' petition, and 
asserted a counterclaim for declaratory judgment, arguing the AMI did not 
expressly or by implication require the offer of any acreage declined by one 
party to the others.
¶6 Plaintiffs filed a motion for summary judgment. Plaintiffs asserted the 
existence of parol evidence demonstrating the parties' intent that declined 
acreage within the AMI be offered to the remaining parties. Defendant objected, 
and filed a motion for summary judgment, arguing the express provisions of the 
AMI did not require the offer of declined acreage to the remaining parties, and 
parol evidence was not admissible to modify or add to the unambiguous terms of 
the AMI as to grant rights not expressed by the plain language of the 
agreement.
¶7 The trial court granted the motion for summary judgment of Defendant, and 
denied the motion for summary judgment of Plaintiffs, holding:

 
 For the Court to interpret the language as Plaintiffs request would be to 
 add an option that did not exist and to read into the contract words that it 
 does not contain. "Courts cannot supply material stipulations or read into a 
 contract words or terms it does not contain; the law will not make a better 
 contract than the parties themselves have seen fit to enter into, or alter 
 it for benefit of one party to detriment of another." The Court must only 
 interpret the contract as written.
 As the language in question makes no reference to an option to acquire 
 shares declined by another party, the court must read that to mean that no 
 such option exists and may not consider any parol evidence introduced by the 
 parties. "A final writing of a contract is assumed to include all of the 
 terms and provisions agreed upon by two parties. If an examination of the 
 'four corners' of the writing demonstrates that the writing was intended to 
 be a complete and exclusive statement of all terms, extrinsic or parol 
 evidence may not be introduced to show additional consistent terms." As the 
 Court finds the language of the contract to be free of ambiguities, it 
 declines to look beyond the four corners of the writing. When a "contract is 
 complete in itself and, viewed in its entirety, is unambiguous, its language 
 is the only legitimate evidence of what the parties intended."
 . . . Plaintiffs request for declaratory judgment, finding that "acquired 
 acreage" under the terms of the Exploration Agreement is to include acreage 
 declined by another partner, is not contained in the writing and should not 
 be so inferred.
(Citations omitted.) Plaintiffs appeal, and the matter stands submitted on 
the trial court record.[1]
¶8 "Summary judgment is appropriate only where there are no material facts in 
dispute and the moving party is entitled to judgment as a matter of law." 
Wathor v. Mutual Assur. Adm'rs, Inc., 2004 OK 2, ¶4, 87 P.3d 559, 561. (Citation 
omitted.) "Where a controversy is resolved by summary judgment, the appellate 
courts review the entire summary judgment record independently and without 
deference to a lower court," that is, de novo. Lowery v. Echostar 
Satellite Corp., 2007 OK 38, 
¶11, 160 P.3d 959, 963. "Summary 
judgment will be affirmed only if the appellate court determines that there is 
no dispute as to any material fact and that the moving party is entitled to 
judgment as a matter of law." Id. "Summary judgment will be reversed if 
the appellate court determines that reasonable men might reach different 
conclusions from the undisputed material facts." Id.
¶9 "The language of a contract is to govern its interpretation, if the 
language is clear and explicit, and does not involve an absurdity." 15 O.S. §154. "When a contract is 
reduced to writing, the intention of the parties is to be ascertained from the 
writing alone, if possible, . . ." 15 
O.S. §155. "The whole of a contract is to be taken together, so as to give 
effect to every part, if reasonably practicable, each clause helping to 
interpret the others." 15 O.S. 
§157. "The words of a contract are to be understood in their ordinary and 
popular sense, rather than according to their strict legal meaning, unless used 
by the parties in a technical sense, or unless a special meaning is given to 
them by usage, in which case the latter must be followed." 15 O.S. §160. So:

 
 . . . The mere fact the parties disagree or press for a different 
 construction does not make an agreement ambiguous. A contract must be 
 considered as a whole so as to give effect to all its provisions. The 
 language in a contract is to be given its plain and ordinary meaning unless 
 some technical term is used in a manner intended to convey a specific 
 technical concept. If a contract is complete in itself, and when viewed as a 
 totality, is unambiguous, its language is the only legitimate evidence of 
 what the parties intended. That intention cannot be divined from extrinsic 
 evidence but must be gathered from a four-corners' examination of the 
 instrument.
Pitco Production Co. v. Chaparral Energy, Inc., 2003 OK 5, ¶13, 63 P.3d 541, 545-546. (Footnotes 
omitted.)
¶10 Whether a contract is ambiguous, and whether extrinsic evidence is 
necessary to resolve an ambiguity, constitute questions of law for the courts. 
See, e.g., GEICO General Ins. Co. v. Northwestern Pacific Indem. Co., 2005 OK 40, 115 P.3d 856. "In the absence of 
accident, fraud, or mistake of fact, when the language of a written contract is 
complete, unambiguous and free from uncertainty as to the parties' intentions, 
parole evidence of prior representations, contemporaneous agreements or 
understandings tending to change, contradict, or enlarge the plain terms of the 
written contract are inadmissible." First Nat. Bank and Trust Co. of Vinita 
v. Kissee, 1993 OK 96, ¶13, 
859 P.2d 502, 506-507. (Footnote 
omitted.)
¶11 In the present case, the AMI provision expressly requires that, when one 
of the parties acquires leasehold acreage outside the "drillsite," but within 
the "area of interest," the leasehold acreage acquired by one of the parties 
within the "area of interest" "be offered to the other Parties and those Parties 
shall have the option to take their proportionate share of the interest based on 
the percentages in Article I by paying their proportionate share of actual 
acquisition costs to the other parties in the proportion of their ownership." 
The AMI provision, however, is entirely silent on the consequences of a 
rejection of the offer by any of the parties, i.e., whether the offeror 
is required to offer the rejected acreage to the other parties.
¶12 The AMI provision permits, but does not require, any party to accept the 
offer to purchase any additional leasehold acres. Because the parties were not 
required to accept any offer of additional acreage, and the parties were free to 
reject any offer of acreage within the AMI, the very real possibility that 
additional leasehold acres within the AMI might become available to purchase 
upon the rejection of any offer is inescapable. This being so, if the parties 
had intended to require the "re-offer" of rejected acreage, they could have 
easily provided. The fact is, however, they did not.
¶13 Given this silence, and in the presence of clear and express language 
requiring only the offer of leasehold acreage within the AMI to the other 
parties, but permitting the rejection of any offer, any attempt to read into the 
agreement some requirement of a "re-offer" of rejected acreage would, as the 
trial court aptly recognized, "add an option that did not exist and to read into 
the contract words that it does not contain." We therefore hold the trial court 
did not err in construing the language as unambiguous, and particularly, the 
language of the AMI provision Exploration Agreement, as not requiring the 
re-offer of rejected leasehold acreage to the other parties to the 
Agreement.

¶14 The order of the trial court is AFFIRMED.

BELL, ACTING P.J., and MITCHELL, J. (sitting by designation), 
concur.

FOOTNOTES

[1] See, 
Rule 13(h), Rules for District Courts, 12 O.S., Ch. 2, App.; Ok.S.Ct.Rule 1.36, 
12 O.S., Ch. 15, App. 1.





 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Supreme Court Cases Cite
Name
Level 1993 OK 96, 859 P.2d 502, 64 OBJ 2159, First Nat. Bank and Trust Co. of Vinita v. Kissee
Discussed 2003 OK 5, 63 P.3d 541, PITCO PRODUCTION COMPANY v. CHAPARRAL ENERGY, INC.
Discussed 2004 OK 2, 87 P.3d 559, WATHOR v. MUTUAL ASSURANCE ADMINISTRATORS, INC.
Discussed 2005 OK 40, 115 P.3d 856, GEICO GENERAL INSURANCE CO. v. NORTHWESTERN PACIFIC INDEMNITY CO.
Discussed 2007 OK 38, 160 P.3d 959, LOWERY v. ECHOSTAR SATELLITE CORP.
Discussed
Title 15. Contracts Cite
Name
Level 15 O.S. 154, Language of Contract Governs
Cited 15 O.S. 155, Intention of Parties Ascertained from Writing
Cited 15 O.S. 157, Whole of Contract Taken Together
Cited 15 O.S. 160, Words of Contract to be Taken in Ordinary Sense - Exceptions
Cited