STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-13-367

STATE OF MAINE
Cumberland, ss. Clerk's Office

AUG 0 9 2016

RECEIVED

MATTHEW J. WALLACE,
et al.,

Plaintiffs

v.

TWIN PINES CONSTRUCTION,
INC., et al.,

Defendants

ORDER ON PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY
JUDGMENT AND STATE FARM
AUTOMOBILE INSURANCE
COMPANY'S MOTION FOR
SUMMARY JUDGMENT

Before the court are (1) defendant State Farm Mutual Automobile Insurance Company's motion for summary judgment and (2) plaintiffs Matthew Wallace and Freja Folce's motion for partial summary judgment. For the following reasons, defendant State Farm's motion is granted and plaintiffs' motion is denied.

FACTS

The parties have stipulated to the following facts for purposes of summary judgment. On September 29, 2011, plaintiff Wallace was operating a vehicle on Route 26 in Woodstock, Maine. (Stipulated S.M.F. ¶ 1.) Plaintiff Folce and her minor daughter, Zoe Folce, were passengers. (Id.) Defendant Corey Hill was operating a vehicle in the opposite direction on Route 26 when he lost control of the vehicle, crossed the centerline of the road, and collided with the vehicle operated by plaintiff Wallace. (Id. ¶ 2.) The collision was caused by the negligence of defendant Hill. (Id. ¶ 3.)

The vehicle operated by defendant Hill was owned by his employer, defendant Twin Pines Construction, Inc. (Id. ¶¶ 4-5.) Defendant Hill was operating the vehicle in the scope of his employment. (Id. ¶ 4.) The vehicle was insured under a policy issued by

1

Safety Insurance Company, which provided liability coverage in the amount of $50,000.00 per person and $100,000.00 per accident by operation of Maine's financial responsibility law. (Id. ¶ 5); see 29-A M.R.S. § 1605(1)(C) (2015).

Defendant Twin Pines was also insured under an excess policy issued by Alterra Insurance, which provided excess liability coverage in the amount of $2,000,000.00. (Id. ¶ 6.) The Alterra policy required defendant Twin Pines to maintain underlying liability coverage in the amount of $1,000,000.00¹, and further provided:

> Failure of the insured to comply with the foregoing [underlying insurance requirement] shall not invalidate this Policy, but in the event of such failure, the Company shall be liable only to the extent that it would have been held liable had the insured complied therewith.

(Id. ¶ 7.) The Safety policy and the Alterra policy were the only policies that provided auto liability insurance to defendant Twin Pines at the time of the accident. (Id. ¶ 9.)

The vehicle operated by plaintiff Wallace was insured under a policy issued by defendant State Farm, which provided uninsured motorist/underinsured (UM) coverage in the amount of $100,000.00 per person and $300,000.00 per accident. (Id. ¶ 10.) In addition, plaintiff Wallace was insured under a separate policy issued by defendant State Farm on another vehicle, which also provided UM coverage in the amount of $100,000.00 per person and $300,000.00 per accident. (Id. ¶ 11.) Plaintiffs' aggregate damages as a result of the accident exceed $100,000.00. (Id. ¶ 14.)

On August 22, 2013, plaintiff Wallace filed a complaint against defendants Hill, Twin Pines, Juliano Fernandes (owner of defendant Twin Pines), Teles Construction, Inc. (a separate company owned by defendant Fernandes), and State Farm. In the complaint, plaintiff Wallace alleged five causes of action: count I, negligence against defendant Hill; count II, vicarious liability against defendants Twin Pines, Fernandes,

---

¹ Although not part of the stipulated facts, it is not disputed that defendant Twin Pines did not maintain underlying liability coverage in the amount of $1,000,000.00. (Pls.' Mot. Summ. J. 8.)

2

and Teles Construction; count III, negligence against defendants Twin Pines, Fernandes, and Teles Construction; count IV, abuse of the corporate form against defendants Twin Pines, Fernandes, and Teles Construction; and count V, UM claims against defendant State Farm. On December 13, 2013, plaintiff Folce filed a separate complaint, individually and on behalf of her minor daughter and alleged the same causes of action. (CV-13-532). The court consolidated the two cases on February 28, 2014.

Plaintiffs have since entered into a settlement with defendant Twin Pines under which Alterra paid $1,000,000.00 to plaintiff Wallace and $1,000,000.00 to plaintiff Folce. (Stipulated S.M.F. ¶ 12.) In addition, Safety paid $50,000.00 to plaintiff Folce and $50,000.00 for the benefit of Zoe Folce. (Id.)

On March 3, 2016, plaintiff Wallace moved to dismiss all defendants other than defendant State Farm. On March 4, 2016, plaintiff Folce filed a motion to approve the settlement, which the court granted on March 10, 2016. M.R. Civ. P. 17A(a). On March 14, 2016, the court dismissed all defendants other than defendant State Farm.

Defendant State Farm filed a motion for summary judgment on May 16, 2016. Plaintiffs filed a motion for partial summary judgment on May 16, 2016 and opposed defendant State Farm's motion on June 3, 2016. Defendant State Farm opposed plaintiffs' motion on June 6, 2016. The parties have agreed not to file reply motions.

DISCUSSION

1. Standard of Review

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute of material fact and that any party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case." Dyer v. Dep't of Transp., 2008 ME 106, ¶ 14, 951 A.2d 821. "A genuine issue of

material fact exists when the evidence requires a fact-finder to choose between competing versions of the truth." Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc., 2005 ME 93, ¶ 9, 878 A.2d 504. Summary judgment may also be used to isolate and decide a dispositive question of law. Magno v. Freeport, 486 A.2d 137, 141 (Me. 1985).

2. Motions for Summary Judgment

The issue presented by the parties' motions is whether plaintiffs are entitled to UM coverage under defendant State Farm's policies. Plaintiffs argue that the Alterra policy is not considered in this analysis and that plaintiffs are therefore entitled to UM coverage because the Safety policy's coverage is less than plaintiffs' coverage under the State Farm policies. (Pls.' Mot. Summ. J. 5-7.) Plaintiffs further argue that, even if the Alterra policy is considered, plaintiffs are entitled to UM coverage because the Alterra policy applies only to damages above $1,000,000.00, and up to that amount, only the Safety policy applies. (Id. at 7-8.) Defendant State Farm counters that the Alterra policy is considered in the analysis and that plaintiffs are not entitled to UM coverage because the Safety and Alterra policies provide combined coverage in excess of plaintiffs' UM coverage under the State Farm policies. (Def.'s Mot. Summ. J. 5-11.)

Maine's UM statute requires insurance policies to provide coverage for injuries caused by owners and operators of underinsured motor vehicles. 24-A M.R.S. § 2902(1) (2015). An "underinsured motor vehicle" is "a motor vehicle for which coverage is provided, but in amounts less than the minimum limits for bodily injury liability insurance provided for under the motorist's financial responsibility laws of this State or less than the limits of the injured party's uninsured vehicle coverage." Id.

The goal of the UM statute is "to provide an injured insured the same recovery which would have been available had the tortfeasor been insured to the same extent as the injured party." Tibbetts v. Dairyland Ins. Co., 2010 ME 61, ¶ 12, 999 A.2d 930

4

(citation omitted). In other words, the UM statute provides coverage for any "gap" between a tortfeasor's policy limit and an injured party's policy limit. Levine v. State Farm Mut. Auto. Ins. Co., 2004 ME 33, ¶ 11, 843 A.2d 24; see Molleur v. Dairyland Ins. Co., 2008 ME 46, ¶ 17, 942 A.2d 1197 ("[T]he availability of uninsured coverage is determined by comparing the injured party's UM/UIM coverage with the liability coverage available under the tortfeasor's policy.").

The cases cited by plaintiffs to argue the Alterra policy should not be considered in the UM analysis are not persuasive. See Dickau v. Vt. Mut. Ins. Co., 2014 ME 158, ¶¶ 17, 24, 107 A.3d 621 (insured's umbrella policy specifically excluded UM coverage to insured and section 2902(1) does not provide such coverage); Geico Gen. Ins. Co. v. Nw. Pac. Indem. Co., 2005 OK 40, ¶¶ 12, 15-18, 115 P.3d 856 (issue was priority of payments in a non-gap state and involved specific policy language). Other gap states have determined that excess policies are included in the UM analysis. See State Farm Fire & Cas. Ins. Co. v. Sayles, 289 F.3d 181, 187 (2d Cir. 2002); Murphy v. Safety Ins. Co., 709 N.E.2d 410, 412-13 (Mass. 1999); Pa. Gen. Ins. Co. v. Morris, 599 A.2d 1042, 1044 (R.I. 1991); Schilling v. Safeco Ins. Co., 2002 Conn. Super. LEXIS 864, at *12-13 (Mar. 13, 2002).

In Tibbetts, the Law Court explained the procedure for determining the amount of UM coverage to which an injured party is entitled:

> In the first step, determining the gap, the court initially asks what amount the injured party would recover if the tortfeasor were insured to the amount of the injured party's UM coverage. If damages are less than the total policy limits . . . the injured party would recover his damages in full. If damages exceed the total limits, he would recover that total limit. After determining this recovery amount, the court then subtracts the amounts already paid by the tortfeasor or by insurers in settlement, and thereby determines the coverage gap.

5

Tibbetts, 2010 ME 61, ¶ 18, 999 A.2d 930; see Farthing v. Allstate Ins. Co., 2010 ME 131, ¶¶ 7-9, 10 A.3d 667; Jipson v. Liberty Mut. Fire Ins. Co., 2008 ME 57, ¶ 9, 942 A.2d 1213 ("We have long held that insurers may offset the amount of coverage available in UM policies to the insured by the amount actually paid by the tortfeasor."); 24-A M.R.S. § 2902(4) (2015) ("In the event of payment to any person under uninsured vehicle coverage, and subject to the terms of such coverage, to the extent of such payment the insurer shall be entitled to the proceeds of any settlement or recovery from any person legally responsible for the bodily injury . . . .").

Defendant Hill was not an underinsured driver. 24-A M.R.S. § 2902(1) (An "underinsured motor vehicle" is "a motor vehicle for which coverage is provided, but in amounts . . . less than the limits of the injured party's uninsured vehicle coverage."). Plaintiffs' UM coverage totaled $300,000.00.[2] (Stipulated S.M.F. ¶¶ 10-11.) Defendant Hill's liability coverage of $2.1 million was paid by Alterra and Safety in settlement. There is no gap in coverage and defendant State Farm is not required to pay. (Id. ¶ 12); see Tibbetts, 2010 ME 61, ¶ 12, 999 A.2d 930 ("The statute does not support double recovery or a windfall to the plaintiff."); Jipson, 2008 ME 57, ¶ 9, 942 A.2d 1213 ("There is no Maine authority to support Jipson's contention that an insured injured by a single tortfeasor may recover a total that is greater than the insured's UM coverage limit.").

The entry is

> Defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment is GRANTED. Judgment is entered in favor of Defendant State Farm Mutual Automobile Insurance Company and against Plaintiffs Matthew J. Wallace and Freja Folce, Individually and as Next Friend of Zoe Folce, on Plaintiffs' Complaint.

---

[2] Defendant State Farm argues plaintiff Wallace had $200,000.00 in UM coverage. (Def.'s Opp'n to Pls.' Mot. Summ. J. 5.) Although the difference of $100,000.00 makes no difference in the comparison of plaintiffs' UM coverage with defendant Hill's liability coverage, the policy language may preclude coverage to plaintiff Wallace under both State Farm policies. (Ex. 3 17.)

Plaintiffs Matthew J. Wallace and Freja Folce, Individually and as Next Friend of Zoe Folce's Motion for Partial Summary Judgment is DENIED.

Date: August 8, 2016

Nancy Mills
Justice, Superior Court

7